No. 18,599.

HARRY C. TINSLEY, WARDEN, ETC. *v.* JAKE CRESPIN, JR. *v.* JOE DANIEL MENZOR, 18,601. v. EDDIE OR EDWARD ULIBARRI, 18,597. *v.* RICHARD HARO, 18,602. *v.* ALPHONSO MARES, 18,600. *v.* WALTER N. THOMPSON, 18,598.

(324 P. [2d] 1033)

Decided April 25, 1958.   Rehearing denied May 19, 1958.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for plaintiff in error.

Mr. SAMUEL D. MENIN, Mr. WALTER L. GERASH, for defendants in error.

304

Mr. Justice Moore delivered the opinion of the Court.

The same basic issues are involved in each of the above captioned actions. The trial court at a single hearing considered the questions presented, although no order was made consolidating the records which were maintained separately below and are lodged separately in this court. The reporter's transcript of the hearing appears in cause No. 18599. On our own motion we have consolidated the above entitled actions for disposition by one opinion in this court.

Defendants in error, to whom we will refer as petitioners, instituted proceedings in the trial court by petitions for writs in the nature of habeas corpus. Orders were issued directing the plaintiff in error, hereinafter referred to as respondent, to make returns. The returns of respondent and responses thereto by petitioners were duly filed, and hearing thereon held February 8, 1958.

The common ground on which petitioners sought discharge from custody was that while serving valid sentences to the reformatory under C.R.S. 1953, 39-10-1, they were transferred to the penitentiary of which respondent is the warden. The said transfer being directed by executive order of the Governor of Colorado under the authority of C.R.S. '53, 3-11-6, which reads in pertinent part as follows:

"The Governor, as head of the department of public institutions shall have and exercise:

"(1) All the right and power to transfer inmates from the Colorado state reformatory at Buena Vista, Colorado, to the Colorado state penitentiary at Canon City, Colorado, whenever such inmate * * * is deemed an incorrigible prisoner whose presence at the Colorado state reformatory appears to be seriously detrimental to the morale, administration, policy or well-being of said Colorado state reformatory."

The order of transfer to the penitentiary, signed by the Governor, contained the following statement:

"* * * and it having been made to appear to me that the following named inmates are incorrigible prisoners at the Colorado State Reformatory and appear to be seriously detrimental to the morale, administration, policy or well-being of said Colorado State Reformatory.

* * *

"It is hereby ORDERED: That the following named inmates be forthwith transferred from the Colorado State Reformatory to the Colorado State Penitentiary, there to serve out the remainder of their sentences pursuant to the terms of their mittimus: * * *."

Petitioners contend that the transfer orders were void because:

"1. Such orders denied due process by changing petitioners' status as reformatory inmates to felons under Article XVIII, Sec. 4 of the Constitution of the State of Colorado as interpreted by *Smalley v. People,* 134 Colo. 360, 304 P. (2d) 902.

"2. In the absence of a court sentence to the penitentiary, confinement and imprisonment therein was illegal.

"3. The action of the Governor violated Articles III and VI of the Constitution of the State of Colorado as well as Article XIV, Sec. 1 of the Constitution of the United States.

"4. The order was invalid because the statute authorizing the same violated Article V, Sec. 21 of the Constitution of the State of Colorado.

"5. The actions of the Governor were void in that the same subjected petitioners to the penitentiary confinement without definite sentence."

The trial court ruled that the statute upon which the transfer orders were based violated Article V, Sec. 21, of the Colorado Constitution (inadequate title to bill) and Article III thereof (separation of powers). The trial court further held that:

"* * * under the Colorado Constitution Article XVIII, Sec. 4 a felony means any criminal offense punishable by death or imprisonment in the penitentiary and none other. That no Court sentenced Petitioner to the penitentiary.

"Therefore, the Court finds that the incarceration of the petitioner in the penitentiary is wholly without authority in law and that he is now entitled to his release."

The attorney general, on behalf of the people, seeks review by writ of error.

Questions to be Determined.

First: *Did the trial court err in holding that C.R.S. '53, 3-11-6(1), under which petitioners were transferred, is unconstitutional for the reason that it purports to confer judicial powers upon the executive branch in violation of Article III of the state constitution which divides the powers of government into "three distinct departments, — the legislative, executive, and judicial," and prohibits any of said departments from exercising "any power properly belonging to either of the others"?*

This question is answered in the affirmative. The statute under which the Governor acted was adopted in 1951 (Session Laws of Colorado, 1951, page 141). It was in full force and effect at the time each petitioner was sentenced to confinement in the reformatory and the possibility of transfer to the state penitentiary was an incident impliedly present in the sentence imposed by the court. We are satisfied that the great weight of authority is opposed to the conclusion reached by the trial court in this connection. We think it sufficient, to demonstrate the correctness of our conclusion, to refer to the general rule as stated in 15 Amer. Juris. page 187, as follows:

"Convicts are frequently transferred from one place of imprisonment to another, and it has been said that such a transfer is not such a judicial act that it cannot be performed by the governor under authority of statute.

With only little authority to the contrary, the validity of statutes authorizing administrative boards, or a court, on their petition, under certain circumstances, to transfer to the state prison or other penal institution one originally sentenced to a reformatory has been sustained, notwithstanding objections that such statutes constituted a denial of due process, conferred judicial powers on an administrative body, or authorized the infliction of cruel and unusual punishment, etc., the courts having taken the view that the power conferred on the boards was one of administrative control or discipline, as distinguished from a judicial function, and that where statutes conferring the power of transfer on the administrative boards are effective at the time of the sentence, the possibility of transfer is an incident impliedly annexed thereto."

We hold that sentences imposed on the petitioners were necessarily made in conformity with law and subject to all conditions imposed by law, including the condition providing for transfer to the penitentiary; such condition became a part of the sentence just as effectively as if set forth therein, word for word. Thus, the sentence imposed was subject to the condition that any person committed who proves to be incorrigible may be transferred by order of the governor to the state penitentiary, there to remain for such time as he might otherwise have been incarcerated in the reformatory. The determination of the existing circumstances conditioning the authority of the governor to make the transfer was properly delegated to him as an administrative duty. *Glazier v. Reed,* 116 Conn. 136, 163 A. 766. For a full discussion of the authorities pertinent to the question, see 95 A.L.R. 1455.

In *Ed Bustamante v. People,* 133 Colo. 497, 297 P. (2d) 538, this court said, inter alia: "Imprisonment in the penitentiary is unlawful unless expressly provided by statute." To this statement we might add that imprisonment in any penal institution is unlawful unless

expressly authorized by law. Designation of place of confinement of those found guilty of crime is a legislative rather than judicial function, and sentences must be pronounced in conformity with the legislative mandate. The legislature clearly has as much authority to authorize transfer to the penitentiary as it has to direct original sentence to the reformatory.

Second: *Did the trial court err in holding that the statute authorizing transfer of petitioners to the penitentiary violated Article V, Section 21 of the Colorado Constitution, which requires that legislative enactments shall contain no more than one subject, "which shall be clearly expressed in its title * * *"?*

This question is answered in the affirmative. The statute involved was enacted in 1951 under the following title:

"AN ACT

"CONCERNING STATE INSTITUTIONS, PROVIDING FOR THE SUPERVISION, MANAGEMENT AND CONTROL THEREOF, AND TO AMEND ARTICLE 2, SECTION 9, SUBSECTION 11 OF CHAPTER 2, COLORADO SESSION LAWS OF 1941."

Thereafter the statute was re-enacted as a part of the 1953 codification. In holding the title of the act defective, the lower court refused not only to accept the original title as a sufficient expression of the subject matter but further adopted the view that the defect was not and could not be cured by re-enactment through inclusion of the act in the revised statutes. On this latter point, the court stated:

"You need not argue that with me. The constitutional provision has to be met in every bill enacted by any body, not only in the State, but the City and County of Denver. That is a prerequisite to the validity of the act, the title. You cannot amend it by passing a book. There is no use arguing that to me * * * You cannot avoid going through the third reading, the first, second and third readings. That is my philosophy of the law.

I know the Supreme Court has made some short cuts to the Constitutional provisions but I am not going to make them."

The authorities which uphold the validity of transfer statutes as against arguments challenging their constitutionality, indicate clearly that such enactments are primarily concerned with powers and policies controlling administrative practices in penal institutions. In order to guard against the evils resulting from incorrigibility of inmates at the reformatory the chief executive was empowered and directed, by the statute involved, to act in an administrative capacity to maintain order and decorum at that institution. Thus the original title covered the general subject matter of the bill. In *Shaffer and Company v. Prosser as Attorney General,* 99 Colo. 335, 62 P. (2d) 1161, the court considered an act of the legislature, the title to which read in pertinent part, "An act relating to fraudulent practices in respect to stocks, bonds and other securities." Counsel in that case contended that the said title was insufficient to authorize the legislature to provide for the issuance and revocation of licenses to dealers in securities. The argument was that the title of the act gives no hint of licensing. The court said, inter alia:

"However, so varied is the practice of entitling legislative acts, and so divergent the questions raised under said section 21, that adjudicated cases are rarely helpful save as they announce broad general principles. Perhaps the latest and most enlightening here is *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098. Therein we reiterated the general rule that 'particularity is neither necessary nor desirable; generality is commendable.' We further said that if the legislation 'is germane to the general subject expressed in the title; if it is relevant and appropriate to such subject, * * * it does not violate this provision of the Constitution.' Tested by these rules, as well as by others laid down by

the adjudicated cases in this jurisdiction, we doubt not this title is sufficient."

Applying the general rules above stated to the case before us we hold that the authority to move incorrigible prisoners "is germane to the general subject expressed in the title," and we further hold that the authority to transfer said unruly prisoners "is relevant and appropriate to such subject." The general subject to which the authority to transfer is "germane," "relevant," and "appropriate" is the supervision, management and control of state institutions.

Even though the title to the bill had been defective, the adoption and passage of the official report of the committee on statute revision by the General Assembly creating the codification which we know as Colorado Revised Statutes 1953, cured the claimed defect. The statute as therein re-enacted was thereafter "not only evidence of the law, but in fact, would be the law itself, as a re-enactment thereof." *In Re Interrogatories,* 127 Colo. 160, 254 P. (2d) 853; *Olin Mathieson Corp. v. Francis,* 134 Colo. 160, 301 P. (2d) 139; *Cooper Motors v. Board of County Commissioners,* 131 Colo. 78, 279 P. (2d) 685. For statement of general rule governing re-enactment of statutes in codification of the law as related to defective original titles, see 82 C.J.S. 459, 460.

Third: *Did the trial court err in holding that the constitutional definition of the word "felony" contained in Article XVIII, Sec. 4, as applied by this court to the habitual criminal law in the case of Smalley v. People, supra, required the discharge of petitioners from custody?*

This question is answered in the affirmative. The trial court misinterpreted our holding in the Smalley case. There the defendant was accused of having been convicted of "felonies" prior to the substantive offense for the commission of which he was on trial. The prosecution sought to invoke a life sentence because of the alleged prior "felony" convictions. To determine whether

the habitual criminal law was applicable it was pertinent to inquire whether the essential "felonies" had been committed by Smalley, and it was held that one of Smalley's prior offenses did not qualify as a "felony" as that word is defined by the constitution.

In the instant case we are not in the least concerned with the question of whether the offense resulting in commitment to the reformatory could be classed as a "felony" under the constitutional definition of that term. The statute authorizing the governor to order the transfer of incorrigible inmates does not provide that the power can be exercised by him only if the reformatory inmate involved had been convicted of a "felony." Nothing in the Smalley case has any bearing on the question as to whether the legislature has the power to authorize the transfer of an inmate of the reformatory from that institution to the state penitentiary, who after sentence becomes incorrigible, nor is the constitutional definition of the word "felony" pertinent to any issue involved in this case.

The judgment is reversed and the cause remanded with directions to dismiss the proceedings in habeas corpus and to remand the petitioners to the custody of respondent.