The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Iemhotep SA'RA, Defendant–Appellant.

No. 02CA2146.

Colorado Court of Appeals, Div. III.

Nov. 18, 2004.

Certiorari Denied Aug. 8, 2005.

**54**

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

PICCONE, J.

Defendant, Iemhotep Sa'ra, appeals the judgment of conviction entered upon a jury verdict finding him guilty of escape from intensive supervised parole (ISP). We affirm.

Defendant was placed on mandatory parole for two years following service of a prison sentence for forgery. Defendant was required to establish a residence of record as a condition of his parole. Defendant designated his wife's residence as his residence of record.

Defendant's parole officer informed him that his residence of record could not be changed without his parole officer's consent and provided defendant with both oral and written notice that he must be at his residence of record during assigned curfew hours. The officer explained that if defendant were absent from his residence of record for more than twenty-four hours, he would be prosecuted for felony escape.

Defendant signed several written notices acknowledging his understanding of these requirements and did not express any uncertainty or confusion about the consequences of being away from his residence of record for more than twenty-four hours.

On November 15, 2000, defendant failed to report to his parole officer. That same day, defendant's wife informed his parole officer that defendant had stopped residing with her. On November 20, 2000, defendant's wife told his parole officer that she last saw defendant on November 16, 2000. Defendant was arrested on January 28, 2001.

I.

■ Defendant contends the trial court erred in instructing the jury when it omitted the "extended limits" language of § 17–27.5–104, C.R.S.2004, from the jury instruction that set forth the elements of escape. We disagree.

■ Defendant objected to the escape instruction at trial on grounds different from those he now complains of on appeal. Therefore, we review his contention for plain error. *See People v. Richards,* 23 P.3d 1223 (Colo. App.2000). Under these circumstances, reversal is required if the defendant demonstrates "not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001)(quoting *Bogdanov v. People,* 941 P.2d 247, 255–56 (Colo.1997)). "In ascertaining whether there was plain error, courts must consider the jury instructions as a whole to determine whether the jury was properly advised as to the law." *People v. Rivas,* 77 P.3d 882, 888 (Colo.App.2003).

Section 17–27.5–104 provides: "If an offender fails to remain within the extended limits on his confinement as established under the intensive supervision program ... he shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208, C.R.S." A person commits escape as a class three felony "if, while being in custody or confinement following conviction of a felony

other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement." Section 18–8–208(2), C.R.S.2004.

As relevant here, the trial court instructed the jury as follows:

The elements of the crime of escape are:

1. That the defendant

2. in the State of Colorado, at or about the date and place charged,

3. was in lawful custody

4. following conviction of Forgery, a class 5 Felony, and

5. knowingly escaped from custody or confinement.

The court defined "custody and confinement" as follows: "As used in the escape statute, [the term] includes the status of an individual who is on Intensive Supervision Parole from the Department of Corrections."

We reject defendant's contention that plain error occurred because the jury was not instructed with the "extended limits" language of § 17–27.5–104. Contrary to his contention, the instructions as a whole instructed the jury on the crime of escape from ISP. The elements instruction for escape essentially tracked the pattern instruction. Further, the court's definition of custody and confinement informed the jury that ISP constitutes custody and confinement.

## II.

■ Defendant contends the trial court violated his right to present a defense by excluding as irrelevant his sister's testimony that he lived with her in the Denver area. We disagree.

■ Trial courts have considerable discretion in deciding questions concerning the admissibility of evidence. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993). Absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. To show an abuse of discretion, an appellant must establish that the trial court's decision to reject the evidence was manifestly arbitrary, unreasonable, or unfair. *Ibarra, supra.*

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401; *People v. Kyle*, 111 P.3d 491, 2004 WL 1690244 (Colo.App. No. 01CA1221, July 29, 2004).

As a condition of ISP, defendant signed a Parole Agreement/Order that stated defendant "shall establish a residence of record and shall reside at such residence in fact and on record; shall not change this place of residence without the consent of his parole officer; and shall not leave the area paroled to nor the state paroled to without permission of the parole officer."

Defendant sought to admit testimony of his sister that he was living with her in the Denver metro area after he failed to return to his residence of record. The trial court found that evidence to be irrelevant to the escape charge because the escape occurred when defendant left his residence of record.

Defendant executed an acknowledgment that he understood that should he leave his designated residence of record for a period in excess of twenty-four hours, he would be prosecuted for felony escape. It is clear from the record defendant was absent from his designated residence of record for a period in excess of twenty-four hours. Therefore, the trial court was correct in its finding that evidence that defendant was living in the Denver metro area was irrelevant to the escape charge. Once defendant failed to remain at his residence of record longer than twenty-four hours, he was considered "to have escaped from custody," regardless of where he lived thereafter. *See* § 17–27.5–104.

## III.

■ Defendant contends the trial court erred in taking judicial notice that a person with defendant's name appeared before the court for sentencing on a prior felony. We disagree.

■ Under CRE 201(b)(2), a court may take judicial notice of facts not subject to reasonable dispute because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot rea-

sonably be questioned." A court may take judicial notice of the contents of court records in a related proceeding. *See Vento v. Colo. Nat'l Bank,* 985 P.2d 48, 52 (Colo.App. 1999).

Here, the court took judicial notice that:

[O]n January 7th, 2000, an individual by the name of Iemhotep Sa'ra appeared before this court, that is myself, . . . a deputy district attorney, represented the People, . . . a defense attorney, represented Mr. Sa'ra . . . . Before me in this . . . courtroom when I take judicial notice of a fact, I am finding that this fact has been established.

We reject defendant's argument that taking judicial notice of this fact constituted directing a verdict.

Contrary to defendant's assertion, the fact that a person with the same name as defendant had appeared before the court for sentencing was not subject to reasonable dispute. *See Vento, supra.* Significantly, the court did not state that defendant had appeared on that day, but merely stated that a person with the same name as defendant had done so. None of the court's comments indicated that defendant was, in fact, the person who appeared before the court.

## IV.

■ Defendant contends the evidence was insufficient to prove the fact of his prior conviction. We disagree.

■ When assessing the sufficiency of the evidence, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *People v. Beatty,* 80 P.3d 847 (Colo.App.2003).

■ "[E]vidence of a prior conviction is an essential element of the crime of escape after conviction." *People v. Rivera,* 37 Colo. App. 4, 7, 542 P.2d 90, 92 (1975); *see also* § 18-8-208.

We conclude the evidence, taken as a whole and in the light most favorable to the prosecution, was sufficient to support defendant's prior conviction beyond a reasonable doubt. The trial court admitted a triple certified copy of the mittimus of defendant's prior felony conviction for which he was in custody and confinement. There also was undisputed evidence that defendant was on parole following service of a sentence with the Department of Corrections.

## V.

■ Defendant contends his violation subjected him only to a parole revocation because he was on home detention as a condition of parole. Specifically, defendant argues that the statutory provisions of ISP, § 17-27.5-106, C.R.S.2004, and the home detention program (HDP) § 17-27.8-101, et seq., C.R.S.2004, conflict and that the rule of lenity requires the application of the HDP provision. We disagree.

A division of this court rejected an identical claim in *People v. Smith,* 77 P.3d 751 (Colo.App.2003). The division concluded that home detention, as established under § 17-27.8-101, et seq., and ISP, as set forth under § 17-27.5-101, et seq., are two different programs. The trial court must make a factual determination as to whether a defendant has been placed in HDP or ISP. Once a trial court determines that a defendant was on ISP, there is no conflict between the two statutory provisions.

Here, the trial court determined that defendant was on ISP. We conclude *Smith, supra,* is dispositive of defendant's contention.

## VI.

■ Defendant contends his conviction must be vacated because he was not in custody or confinement. Specifically, defendant argues that a person released to mandatory parole cannot commit felony escape as a matter of law because he has discharged his sentence to imprisonment and is no longer in custody or confinement. We disagree.

In *People v. Taylor,* 74 P.3d 396 (Colo.App. 2002), and *People v. Garcia,* 64 P.3d 857 (Colo.App.2002), two divisions of this court

rejected identical claims. "With some exceptions ... every DOC sentence consists of a period of imprisonment and a period of mandatory parole.... 'Offenders on parole shall remain under legal custody and shall be subject at any time to be returned to a correctional facility.'" *Garcia, supra*, 64 P.3d at 861 (quoting § 17–2–207(3), C.R.S.2004); *see Taylor, supra; see also People v. Williams*, 33 P.3d 1187 (Colo.App.2001).

We agree with the reasoning and analysis in *Garcia, supra*, and *Taylor, supra*, and find these cases to be dispositive of defendant's contention.

## VII.

Defendant contends §§ 17–27.5–104 and 17–27.5–106 are unconstitutional. We disagree.

### A.

■ Defendant asserts § 17–27.5–104 violates the separation of powers and nondelegation doctrines of the Colorado Constitution. Specifically, he argues that, in failing to define the extended limits of confinement, the General Assembly unconstitutionally delegated its legislative power to the executive branch. We are not persuaded.

■ The party challenging a statute on constitutional grounds bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. *People v. Holmes*, 959 P.2d 406 (Colo.1998).

■ The nondelegation doctrine is rooted in the constitutional separation of powers, whereby the Colorado Constitution divides the government's powers into three departments—judicial, legislative, and executive. Colo. Const. art. III; *People v. Holmes, supra.* Under this framework, only the General Assembly is empowered to declare specific conduct to be a crime. *People v. Baker*, 45 P.3d 753 (Colo.App.2001). While the General Assembly may not delegate its power to enact laws, it may delegate "the power to determine a state of facts upon which the law depends." *Baker, supra*, 45 P.3d at 755. When the General Assembly chooses to delegate this power, it must "adopt appropriate safeguards by which the delegated power is exercised," and thus the legislature must "provide sufficiently precise standards to guide a judge or jury in deciding whether a crime has been committed." *Baker, supra*, 45 P.3d at 755.

As long as the General Assembly establishes a "definite framework for the law's operation," it may properly delegate the details of rulemaking to an administrative agency to carry out that operation. As our decisions recognize, it will often be impracticable for the General Assembly to fix rigid standards to guide agency action, particularly in situations involving exercise of police power, without destroying the flexibility necessary to effectuate obvious legislative goals in dealing with complex economic and social problems.

*People v. Holmes, supra*, 959 P.2d at 412 (quoting *People v. Lowrie*, 761 P.2d 778, 781 (Colo.1988)).

We reject defendant's claim that there are no restrictions or guidelines for ISP participants regarding their place of residence or the extended limits of their confinement. The legislature has permitted the parole board flexibility but has also provided it with a framework.

We conclude that these statutory provisions sufficiently limit the parole board's authority to impose conditions on the parolee's "place of residence" and that, therefore, § 17–27.5–104 does not violate the separation of powers and nondelegation doctrines. The standards and criteria for offenders in ISP programs are set forth in § 17–27.5–102(2), C.R.S.2004. The parole board must set the "extended limits" of a parolee's ISP confinement. The parolee must receive and sign an agreement that sets forth his or her place of residence and the area to which he or she is restricted. That the standards allow for differences in extended limits among ISP participants does not render the statute unconstitutional. The extended limits will necessarily vary—different offenders may have different extended limits.

Thus, because the statute "provides sufficient statutory standards and safeguards to withstand a challenge based on the nondelegation doctrine," we conclude it is not uncon-

stitutional. *See Holmes, supra,* 959 P.2d at 412.

### B.

■ Defendant asserts §§ 17–27.5–104 and 17–27.5–106 violate equal protection by failing to provide a rational basis for determining which parolees are subject to ISP and, consequently, which are subject to liability for escape. We disagree.

In *People v. Williams, supra,* a division of this court rejected an identical claim. The division concluded there is no equal protection violation because the statutory scheme set forth in § 17–27.5–101, et seq., is reasonably related to the legitimate governmental interest of supervising at-risk parolees. *Williams, supra.*

We agree with the reasoning and analysis in *Williams* and conclude it is dispositive of defendant's contention.

### C.

■ Defendant contends § 17–27.5–104 violates the clear expression requirement of the Colorado Constitution because the statute creates a felony offense and subjects offenders to punishment without this subject matter having been clearly expressed in the title of the bill. We are not persuaded.

Article V, § 21 of the Colorado Constitution states:

No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.

■ The clear expression requirement is met where the legislation is germane, relevant, and appropriate to the general subject expressed in the title. *Parrish v. Lamm,* 758 P.2d 1356, 1363 (Colo.1988); *see Tinsley v. Crespin,* 137 Colo. 302, 309, 324 P.2d 1033, 1037 (1958); *Board of Comm'rs v. Board of Comm'rs,* 32 Colo. 310, 312–13, 76 P. 368, 369 (1904). The word "germane" means "closely allied," "appropriate," or "rel-

evant." *Parrish, supra,* 758 P.2d at 1363. There is no requirement that the title clearly express the act's provisions or the details by which its object is to be accomplished. *Board of Comm'rs v. Board of Comm'rs, supra.* A statute is valid although a punishment or penalty provided therein is not mentioned in its title, if the punishment or penalty is connected with and germane to it and is essential to accomplish the object indicated in the title. *People v. Agnew,* 107 Colo. 399, 401–02, 113 P.2d 424, 426 (1941).

Here, the title of the bill enacting Article 27.5 of Title 17 read: "An Act Concerning Intensive Supervision Programs For Offenders." 1989 Colo. Sess. Laws, ch. 157 at 883. The subject of § 17–27.5–104 is clearly expressed in this title. Criminal liability for failure to remain within the extended limits of confinement is essential to the accomplishment of the goal of the title. Accordingly, because prosecution for escape is relevant and appropriate to ISP, the title's subject, the clear expression requirement is satisfied.

### VIII.

■ Defendant contends his conviction for escape violates double jeopardy because it follows the revocation of his parole based on the same conduct. We disagree.

■ Double jeopardy does not apply to a parole revocation situation. *People v. Taylor, supra; People v. Gallegos,* 914 P.2d 449 (Colo.App.1995). Parole revocation is not a proceeding meant to punish a parolee. *Taylor, supra.* It is merely an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole. Because parole revocation is an administrative proceeding, it does not constitute punishment, but simply reaffirms the original sentence and requires the defendant to serve it in custody. We agree with the reasoning in *Taylor* and *Gallegos* and find it dispositive. Further, we do not read *People v. Luther,* 58 P.3d 1013 (Colo.2002), relied upon by defendant, as mandating a different result. *Luther* does not address the double jeopardy issue presented here.

## IX.

■ Defendant argues the trial court violated his right to a speedy disposition under the Uniform Mandatory Disposition of Detainers Act (UMDDA). We disagree.

"The UMDDA controls the disposition of detainers within the State of Colorado and guarantees a defendant in a criminal case the right to a speedy trial." *People v. Shreck,* 107 P.3d 1048, 1056, 2004 WL 2137067 (Colo. App. No. 02CA1413, Sept. 23, 2004). It provides that, within ninety days after receipt of a prisoner's request for final disposition of any untried charges, the prisoner must be brought to trial. *See* §§ 16–14–102(1), 16–14–104(1), C.R.S.2004.

■ A defendant may waive his or her UMDDA speedy trial rights "expressly or by affirmative conduct, such as by participating in setting the trial date outside of the speedy trial provisions' or expressly consenting to the delay." *Shreck, supra,* 107 P.3d at 1056 (quoting *People v. Garcia,* 17 P.3d 820, 823 (Colo.App.2000)).

■ "Where motions are made for a defendant's benefit, any reasonable time necessitated by such motions, including continuances, extends the speedy trial time limit." *Garcia, supra,* 17 P.3d at 823.

Here, defendant requested a speedy trial pursuant to the UMDDA on August 21, 2001. On September 14, defendant agreed not to request a ninety-day speedy trial in the escape case. After questioning defendant about the waiver, the court found that defendant "knowingly and voluntarily waived his right ... to the enforcement of the [UMDDA] ... so the court will set a standard trial date [for January 28, 2002]." The trial court specifically noted that it was setting the trial within the 180–day speedy trial period set forth in § 18–1–405, C.R.S.2004, explaining, "If I bring you to trial by March 14th in the escape case ... your speedy trial right is being honored." Defendant agreed with the trial court's speedy trial calculation.

On October 9, 2001, defendant waived his right to speedy trial again. Based on this waiver, defendant's new speedy trial deadline became April 9, 2002. The court rescheduled defendant's trial for March 18, 2002. Ten days before the trial, on March 8, 2002, defense counsel stated that defendant "is prepared to waive speedy trial on the escape case." Defendant made it clear he was waiving his speedy trial right voluntarily. The parties and the court agreed that defendant's new speedy trial date would be September 8, 2002. No new trial date was requested by defendant or set at that time.

On March 19, 2002, defendant filed a pro se motion to reassert his right to a speedy trial under the UMDDA and requested a trial within ninety days. Defense counsel informed the court of defendant's motion. The court, with defense counsel's consent, set a trial date of July 22, 2002. The court denied defendant's request to reassert his right to a speedy trial, finding that defendant waived that right on March 8.

Defendant concedes he agreed to waive his right to speedy trial on March 8, and the record demonstrates that defendant repeatedly and voluntarily waived that right. Specifically, defendant waived his right to speedy trial under the UMDDA on August 21, 2001, and agreed to toll the speedy trial period until March 14, 2002. *See People ex rel. Gallagher v. Dist. Court,* 933 P.2d 583 (Colo.1997)(affirmative conduct by defendant, such as consent to delay, is treated as a waiver of the right to speedy trial). Defendant waived his right to speedy trial again on October 9, 2001 and March 8, 2002. On April 19, 2002, defendant agreed to a July 22, 2002 trial date, and in so doing waived his right to speedy trial yet again. *See People v. Martinez,* 712 P.2d 1070 (Colo.App.1985)(defendant may waive speedy trial by participating in setting the trial date outside of the speedy trial period).

Notwithstanding the numerous times defendant waived his right to speedy trial, he argues that his March 19, 2002, pro se motion "reasserted" his speedy trial rights under the UMDDA and cites *People v. Naulls,* 937 P.2d 778 (Colo.App.1996), in support.

Defendant's reliance on *Naulls* is misplaced. There, a defendant invoked his right to a speedy trial under the UMDDA, later requested a continuance of his arraignment date, and agreed to waive his right to a

speedy disposition to complete a DOC boot camp program. Following his arraignment, the defendant objected to a trial date outside of the ninety-day UMDDA speedy trial period. The *Naulls* division concluded that the defendant waived his right to a speedy trial only for the express purpose of completing the boot camp program. Here, unlike in *Naulls,* defendant unconditionally waived his right to speedy trial under the UMDDA and attempted later to assert this right. As such, *Naulls* is inapplicable to defendant's situation.

The judgment is affirmed.

Judge TAUBMAN and Judge VOGT concur.