23CA1549 Peo v King 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1549
El Paso County District Court No. 21CR5056
Honorable Lin Billings Vela, Judge
Honorable Gilbert A. Martinez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Noel Lavertt King, Jr.,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Noel Lavertt King, Jr., appeals his conviction for one count of first degree burglary and two counts of violation of a protection order.  We reverse and remand for further proceedings.

## I.     Background

¶ 2     In 2021, King was restrained by two protection orders that prevented him from contacting his wife, contacting his two daughters, or going near the family home.  In the early morning of September 3, King entered the home and assaulted the protected parties.  Police arrived after a 911 call and arrested King.

¶ 3     In relevant part, the charges brought against King included violations of the protection orders and burglary by unlawfully entering the home with the intent to violate the protection orders.

¶ 4     During trial, the court granted the prosecution's request to take judicial notice of the facts that King had been advised of the two protection orders and that the protection orders remained active on September 3.

¶ 5     The jury found King guilty of one count of first degree burglary, two counts of violation of a protection order, and six

counts not raised on appeal.[1]  *See* § 18-4-202(1), C.R.S. 2025;

§ 18-6-803.5(1)(a), C.R.S. 2025.  The trial court sentenced him to a

controlling sentence of twelve years in the custody of the

Department of Corrections.

## II.    Analysis

¶ 6      On appeal, King claims that the trial court (1) improperly took

judicial notice and (2) violated his due process rights.  We consider

each contention in turn.

## A.    Improper Judicial Notice

¶ 7      King contends that the trial court abused its discretion by

taking judicial notice under CRE 201 of the adjudicative facts that

King had had actual knowledge of the two protection orders and

that the protection orders remained in effect on September 3, 2021.

We agree as to the former.

---

[1] These unchallenged counts are two counts of child abuse, one count of second degree assault, two counts of third degree assault, and one count of obstruction of telephone or telegraph service.  *See* § 18-6-401(1)(a), (7)(a)(III), (7)(a)(V), C.R.S. 2025; § 18-3-203(1)(g), C.R.S. 2025; § 18-3-204(1)(a), C.R.S. 2025; § 18-9-306.5(1), C.R.S. 2025.  The jury also found King not guilty of one count of child abuse, one count of second degree assault, two counts of third degree assault, and one count of a crime of violence sentence enhancer.  *See* § 18-6-401(1)(a), (7)(a)(V); § 18-3-203(1)(g); § 18-3-204(1)(a); § 18-1.3-406(2)(a)(I)(B), C.R.S. 2025.

## 1. Additional Background

¶ 8    During trial, the prosecution admitted into evidence two mandatory protection orders against King, issued in El Paso County Case Nos. 21M3966 and 21M2394 on July 28 and May 17, 2021, respectively.  The prosecutor noted that minute orders in each case indicated that King had been advised of and had acknowledged each protection order.  In pertinent part, the protection orders stated that they remained active until their respective cases reached a disposition, which occurred in both cases on April 21, 2022.  Both cases were sealed shortly after that date.

¶ 9    At the end of the prosecution's case and outside the presence of the jury, the prosecutor moved the trial court to take judicial notice of the minute orders from the prior cases.  Defense counsel objected, stating that judicial notice "has to be an undisputed fact." Defense counsel argued that the facts were disputed because the court records were sealed and no witness had identified King as the individual who was advised.

¶ 10    The trial court reviewed the court records and read the minute orders aloud:

[Case No. 21M3966:] Advised defendant via video advisement. *Defendant advised of charges, possible penalties and mandatory protection order* on the record. Advised of Senate Bill 13[-]197. *Defendant acknowledged [protection order]*, waives right to hearing on the protection order provisions pertain[ing] to S.B. 13[-]197. . . .

[Case No. 21M2394:] *Advised of possible penalties and mandatory protection order* on the record. Advised of Senate Bill 13[-]197. Advised per House Bill 21-1255. Affidavit provided set for compliance hearing. *Defendant acknowledged [protection order]*, waives right to hearing on the protection order provisions pertaining to S.B. 13[-]197 . . . .

(Emphasis added.) The court then overruled King's objection and ruled that it would take judicial notice of the facts contained in the minute orders.

¶ 11 Defense counsel objected again and said that "the records were not viewable because they are sealed" but also asked the court "to take judicial notice of the dates [on which the cases] were dismissed." The court overruled her objection but granted her request to include the dismissal dates.

¶ 12 At the end of the trial, the court provided the jury with the following instruction on judicial notice and the court's judicially noticed facts from the minute orders:

A party may ask the [c]ourt to take judicial notice of certain facts. When the [c]ourt takes judicial notice of a fact, it means that the [c]ourt has allowed the fact into evidence without requiring proof of it. You may, but are not required to, accept any fact judicially noticed by the [c]ourt. It is entirely your decision to determine what weight, if any, shall be given to the evidence.

In this case, the [c]ourt has taken judicial notice of the following facts:

Regarding [the protection order in El Paso County Case No. 21M3966]: On July 28, 2021, the Defendant, Noel King, was advised of the mandatory protection order and acknowledged it. The mandatory protection order was still active on September 2-3, 2021.

Regarding [the protection order in El Paso County Case No. 21M2394]: On May 12, 2021, the Defendant, Noel King, was advised of the mandatory protection order and acknowledged it. The mandatory protection order was still active on September 2-3, 2021.

Both cases associated with the protection orders . . . were dismissed on April 21, 2022.

¶ 13    The court further instructed the jury that, as an element of first degree burglary, the prosecution had to prove that King intentionally committed the crime of violation of a protection order. And it instructed that one of the elements of violation of a protection order was that King had "been personally served with a

5

protection order that identified [King] as a restrained person, or otherwise ha[d] acquired from the court or law enforcement personnel actual knowledge of the contents of a protection order that identified [King] as a restrained person." *See* § 18-6-803.5(1)(a).

## 2.  Standard of Review

¶ 14     We review a trial court's decision to take judicial notice under Rule 201 for an abuse of discretion. *People v. Sena*, 2016 COA 161, ¶ 22. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.* (quoting *People v. Orozco*, 210 P.3d 472, 475 (Colo. App. 2009)).

¶ 15     If a nonconstitutional trial error was preserved by objection, we review it for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, if we determine a trial court erred, we will reverse the judgment only if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).  That means "an objected-to trial error is harmless if there is no reasonable

possibility that it contributed to the defendant's conviction." *Pernell v. People*, 2018 CO 13, ¶ 22.

### 3. Applicable Law

¶ 16 Under Rule 201(b), a trial court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As it relates to court files, a trial court can take judicial notice of adjudicative facts in its own court records if those facts merely establish "that various proceedings or actions have already taken place." *Doyle v. People*, 2015 CO 10, ¶ 12. This, for example, may include "such things as a calendar date, the term of a public office, and matters found in statistical charts." *Id.* at ¶ 10.

¶ 17 However, the truth or accuracy of an adjudicative fact isn't indisputable just because it is specifically sourced from court records. *Id.* Rather, a fact is indisputable if it is commonly verifiable, meaning any error in the particular source "can be easily demonstrated." *Id.* While "the occurrence of [a] legal proceeding or other court action itself" is commonly verifiable, "the resolution of a

7

factual matter at issue in a prior judicial proceeding" is not, making the latter adjudicative fact an improper subject for judicial notice. *Id.* at ¶ 17.

### 4. Preservation

¶ 18    We are unconvinced by the People's assertion that King failed to preserve this issue by not directing the trial court to consider the specific parameters of *Doyle*. King wasn't required to cite case law in his objection to preserve his issue for appellate review. *See People v. Salas*, 2017 COA 63, ¶ 29 (holding that formulaic language is not required for preservation). And King objected that the minute orders weren't "properly judicially noticed" because they weren't "undisputed," which sufficiently called the court's attention to the issue. Further, defense counsel argued that there had "not been any witnesses presented to identify the individual who was advised as Mr. King" in the minute orders. After this exchange, the court ruled on the propriety of the judicial notice, preserving the contention for appeal. *See People v. McFee*, 2016 COA 97, ¶ 31 ("Where, despite imprecision in the objection, the trial court actually rules on the claim raised on appeal, and makes findings of fact and conclusions of law, the claim is sufficiently preserved.").

### 5. Improper Judicial Notice of King's Knowledge of the Protection Orders

¶ 19    As to the substance of his contention, King argues that the following were not judicially noticeable facts under *Doyle*: (1) King had been advised of and had acknowledged the protection orders, and (2) the protection orders remained active when the charged crimes occurred.

¶ 20    Regarding whether "the Defendant, Noel King," was present for the advisement and acknowledgment of the protection orders, the court strayed past the proper boundaries of Rule 201. Instead of merely taking judicial notice to establish that the proceedings or actions had already taken place, as reflected in court records, it took judicial notice of adjudicative facts from the prior cases that were subject to reasonable dispute.

¶ 21    To illustrate, in *Doyle*, the defendant was charged with violating a condition of his bail bond. *Doyle*, ¶ 1. The trial court took judicial notice from the court record of the fact that the defendant failed to appear in court on a particular day as mandated by a condition of his bond. *Id.* The supreme court held that the trial court erred because it did not "merely tak[e] notice of its own

prior finding and the effect of that finding." *Id.* at ¶ 13. Instead, the judicial notice improperly "extended to the accuracy of the court's finding at that prior proceeding," which was not beyond reasonable questioning. *Id.* Thus, it concluded that the defendant's failure to appear was disputable and improper for judicial notice. *Id.*

¶ 22 Contrast those events to the events in *People v. Sa'ra,* when the trial court took judicial notice that *a person with the defendant's name* appeared for sentencing in a prior felony case. 117 P.3d 51, 55-56 (Colo. App. 2004). A division of this court held that the judicially noticed fact there was not subject to reasonable dispute because the trial court did not identify "that [the] defendant was, in fact, the person who appeared before the court" in the prior proceeding. *Id.* at 56; *cf. Sena,* ¶ 27 (holding that judicial notice of an outstanding arrest warrant was proper because the trial court did not take "an additional step beyond notice of the existence of a record").

¶ 23 Here though, the court took judicial notice of facts that were subject to reasonable dispute. The court did not merely note that court records indicated that an individual named Noel King was

advised in the prior protection order cases. The accuracy of those facts would be readily verifiable by reference to the court records themselves. Instead, the court went one step further and took judicial notice that, *in fact,* "the Defendant, Noel King," appeared, was advised, and acknowledged the protection orders in the prior cases. The accuracy of the court's prior findings was not beyond reasonable dispute merely because the findings were sourced from court records. *See Doyle,* ¶¶ 10-12. And whether the individual who was advised in those earlier proceedings was actually the same Noel King was subject to reasonable dispute. Therefore, the court's judicial notice of these disputable facts was an abuse of discretion.

¶ 24    But with regard to the protection orders being active on September 3, those adjudicative facts were proper subjects for judicial notice. Regardless of whether it was the same Noel King who appeared at the advisements, the court's issuance of the protective orders — which stated that they remained active until the final dispositions of the prior cases — established when the orders were in effect and when they expired according to the disposition dates of the prior cases. The legal effects of the minute orders in this respect are undisputable because they can be easily verified by

11

the court records and protection orders themselves.  *See Doyle,*
¶ 10.

¶ 25    Nonetheless, King argues that there is no "legal effect" exception under *Doyle.*  But we disagree with the premise that there is an exception at issue here.  Notice of the protection orders' effective dates and their respective cases' disposition dates are the type of commonly verifiable "calendar date[s]" showing that "various proceedings or actions have already taken place."  *Id.* at ¶¶ 10, 12. This makes them the exact kind of facts permissible for judicial notice — not an exception to the rule.

¶ 26    We therefore conclude that the court erred by taking judicial notice that King was advised in a prior proceeding, but it did not err by taking judicial notice that the protection orders were active on a particular date.

### 6.    Judicial Notice of King's Knowledge Was Not Harmless

¶ 27    Determining whether the erroneous admission of evidence is harmless depends on several factors, including (1) whether the evidence was important; (2) whether it was cumulative; (3) whether there was corroborating or contradicting evidence on the point at

issue; and (4) how strong the prosecution's case was overall. *People v. Faussett*, 2016 COA 94M, ¶ 54. We address each factor in turn.

¶ 28 First, the improper judicially noticed fact was important because it established a specific element of the crimes laid out in the jury instructions. To convict King of violating a protection order, the jury had to find that King had "*actual knowledge* of the contents of a protection order that identified [King] as a restrained person." (Emphasis added.) *See* § 18-6-803.5(1)(a). Taking judicial notice of the fact that King had been advised of and acknowledged the protection order was directly probative of this element. And in turn, this proof of King's actual knowledge was directly probative of the element for first degree burglary that King had an intent "[t]o commit [in the home] the crime of Violation of a Protection Order." *See* § 18-4-202(1).

¶ 29 Second, the only cumulative evidence here of King's actual knowledge of the contents of the protection orders besides the judicially noticed facts was his alleged signatures on the protection

orders.[2]  The signatures were each under provisions that said, "By signing, I acknowledge receipt of this [o]rder."

¶ 30    Third, there was some contradictory evidence on the point at issue.  It is true that King's main theory of defense in his closing argument focused on disputing that he knowingly violated the protection orders because his wife gave him permission to come into the home.  *See id.*  But while this defense didn't directly argue that King lacked knowledge of the protection orders, defense counsel nonetheless contested the issue.  After an officer testified to the validity of the protection orders, King's lawyer elicited testimony on

---

[2] King claims that the holding of *Doyle v. People*, 2015 CO 10, precludes us from analyzing any cumulative evidence.  We are unpersuaded because, in *Doyle*, the supreme court forewent a cumulative-evidence analysis because the trial court's jury instruction, stating that the defendant's failure to appear was "not subject to reasonable dispute" and that "the court ha[d] accepted [that fact] as being true," stamped the improper evidence with the trial court's imprimatur in a way that "clearly posture[d] the judicially noticed fact . . . as something more than cumulative evidence."  *Id.* at ¶¶ 5, 15-17.  By contrast, here, the trial court's judicial notice instruction, stating that it had "allowed the fact[s] into evidence without requiring proof of [them]" and that the jury could "but [was] not required to, accept any fact judicially noticed by the [c]ourt," didn't infringe on the jury's prerogative to determine the weight of the evidence.  As a result, we may consider cumulative evidence because the judicially noticed facts here weren't sanctioned to be "more than cumulative evidence."  *Id.* at ¶ 15.

cross-examination that the officer wasn't present when the orders were issued and didn't personally know who signed them. This presented at least some evidence to challenge King's signatures as proof beyond a reasonable doubt that he had actual knowledge of the protection orders' contents.

¶ 31    Fourth, although the prosecution presented copies of the protection orders, the absence of any other proof establishing his identity suggests a lack of overall strength in the prosecution's case on this issue.

¶ 32    Taking these factors together, we cannot conclude that "there is no reasonable possibility that [the error] contributed to [King]'s conviction." *Pernell*, ¶ 22. To be sure, as the People argue, the jury could have inferred from specific details contained in the protection orders — details that included King's physical appearance, relationship to the victim, and address of the home where the crimes took place — that the signatures didn't belong to some other person with King's name. But the judicially noticed facts eliminated the need for it to do so. The judicial notice permitted the jury to find King's actual knowledge without requiring any inferential steps. And indeed, the judicial notice provided some indicia of the trial

court's imprimatur on the judicially noticed facts, as the jury could reason that the facts wouldn't have otherwise been admitted unless the court found them valid to some degree. *See Doyle*, ¶¶ 15-16. It follows that there is a reasonable possibility that the jury accepted the clarity and authority of the judicial notice without resorting to inferences from the other evidence, particularly given King's contesting of the validity of the signatures on the protection orders and the limited evidence presented by the prosecution.[3] *See Pernell*, ¶ 22. Therefore, we reverse the conviction and remand the case for retrial on the two counts of violation of a protection order and one count of first degree burglary.

---

[3] To the extent it may arise at retrial, we are unpersuaded by King's claims that the trial court's judicial notice improperly emphasized the protection orders themselves by implying the orders were consistent with judicially noticed facts. In the judicial notice instruction, the protection orders were referenced generally for context, and the court did not draw the jury's attention to any prominent aspects of the protection orders, such as the signatures. *See People v. Manyik*, 2016 COA 42, ¶ 71 ("[A] trial court 'has no duty to, and should not, select the salient points in the evidence, favorable or unfavorable, and specifically call them to the attention of the jurors.'" (quoting *Wertz v. People*, 418 P.2d 169, 170 (Colo. 1966))).

## B.    Due Process

¶ 33    King next argues that the trial court violated his due process rights by taking judicial notice without providing King with sufficient notice or an opportunity to review the sealed minute orders.  We decline to address the merits of this contention.

¶ 34    "To preserve a Colorado Constitutional argument for appeal, . . . a defendant must make an objection sufficiently specific to call the attention of the trial court to the potential Colorado Constitutional error."  *Martinez v. People*, 244 P.3d 135, 140 (Colo. 2010); *accord People v. Harmon*, 2025 COA 38M, ¶ 56 ("[W]e generally do not address constitutional arguments raised for the first time on appeal.") (*cert. granted* Mar. 30, 2026).

¶ 35    As discussed, King objected to the court taking judicial notice of the contents of the minute orders on the basis that they contained disputed facts.  While his objection mentioned that the records were inaccessible, King couched this inaccessibility within his overall objection of improper judicial notice.  And after the court read the contents of the minute orders in open court, King made no objection relating to the inaccessibility of those orders.

17

¶ 36    Thus, we will not review the contention because King's

objection didn't apprise the trial court of a due process issue,

meaning the court couldn't develop a record on the matter.  *See*

*People v. Allman,* 2012 COA 212, ¶¶ 14-16 (holding that we have

discretion not to review unpreserved constitutional challenges if

there isn't a sufficiently developed record); *Martinez,* 244 P.3d at

140 (holding that the appellate court erred in considering a

constitutional contention because the defendant's objection at trial

to improper testimony failed to preserve a constitutional argument

for appeal); *see also Phillips v. People*, 2019 CO 72, ¶ 12 ("[I]t is not

enough merely to mention a possible argument in the most skeletal

way, leaving the court to do counsel's work . . . ." (quoting *United

States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).  Specifically, the

record is insufficiently developed in this case because we don't see

how the trial court "refus[ed] to disclose records" when it read the contents of those records during trial.[4]

¶ 37    As for advance notice, Rule 201(f) allows judicial notice to "be taken at any stage of the proceeding." And Rule 201(e) specifically contemplates a situation where advance notice doesn't occur: "In the absence of prior notification, the request [to be heard] may be made after judicial notice has been taken." No such request exists in the record.

### III.    Disposition

¶ 38    During the pendency of this appeal, King filed a motion for correction of the mittimus in the underlying trial court case. We take judicial notice of the subsequent proceedings in the trial court. *See Sa'ra*, 117 P.3d at 56. The trial court granted King's request

---

[4] The only explanation King offers for why the court's ruling at this particular stage of the proceedings was inappropriate is that he didn't have access to the records, and he hadn't received advance notice. But as we note, the court did give him access to the records by reading them in court, and he didn't ask for additional access to them. So even if we were to consider this contention on the merits, we would reject it. In addition, King notes that defense counsel is still unable to access the minute orders from the sealed court record. We have confirmed the accuracy of the trial court's reading of the minute orders into the record. *See People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) ("A court may take judicial notice of the contents of court records in a related proceeding.").

and issued an amended mittimus reflecting that he was acquitted of the crime of violence sentence enhancer count. While the amended mittimus appears to be correct, King's direct appeal of his convictions divested the trial court of jurisdiction relating to the judgment of conviction on appeal. *See People v. Dillon*, 655 P.2d 841, 844 (Colo. 1982) ("Unless otherwise specifically authorized by statute or rule, once an appeal has been perfected, the trial court has no jurisdiction to issue further orders in the case relative to the order or judgment appealed from.").

¶ 39　　The judgment of conviction for one count of first degree burglary and two counts of violating a protection order are reversed, and the case is remanded for further proceedings consistent with this opinion. The trial court should issue an amended mittimus after reacquiring jurisdiction following issuance of the appellate mandate to reflect the jury's not guilty verdict for the crime of violence sentence enhancer count. *See* Crim. P. 35(a). All other aspects of the judgment of conviction not challenged on appeal remain undisturbed.

　　JUDGE FOX and JUDGE SULLIVAN concur.