The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Billy Elijah JACKSON, Defendant–Appellant.

No. 03CA0744.

Colorado Court of Appeals, Div. V.

Oct. 7, 2004.

Certiorari Denied March 21, 2005.

Ken Salazar, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Keyonyu X. O'Connell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Billy Elijah Jackson, appeals the trial court's order denying his Crim. P. 35(c) motion to set aside a period of post-release supervision or certain conditions of supervised release. We affirm.

After pleading guilty in 1999 to a class five felony charge of menacing, defendant was sentenced to two years incarceration and two years mandatory parole. Following completion of his incarceration term, he was duly paroled. However, when he consumed alcohol in violation of his conditions of parole, his parole was revoked, and he was reincarcerated for the remainder of the mandatory parole period.

Near the end of his reincarceration period, defendant was told that he would be required to successfully complete an additional one-year period of post-release supervision, under Colo. Sess. Laws 1998, ch. 314, § 17–22.5–403(9)(a)–(f) at 1445–47 (amended Colo. Sess. Laws 2003, ch. 423, § 17–22.5–403(9) at 2677–79, 2680) (§ 17–22.5–403(9)(a)–(f)). Faced with the alternative of continued incarceration, defendant reluctantly signed an agreement allowing for his supervised release.

Soon after being released, defendant, through counsel, filed a Crim. P. 35(c) motion asserting various grounds upon which to set aside either the additional period of supervision or a sex offender condition of his release. The trial court denied the motion after a hearing, but subsequently entered an

order effectively staying the parole board's supervision of defendant's release.

On appeal, defendant asserts that (1) § 17–22.5–403(9)(a)–(f) is unconstitutional; (2) he should not be subject to additional supervision, inasmuch as he was not advised of such when he entered his plea; and (3) in the event he is subject to additional supervision, the matter must be remanded to the trial court to determine whether he may be forced to participate in sex offender testing or treatment as a condition of supervised release. We reject these arguments in turn. First, however, we review the provisions of § 17–22.5–403(9)(a)–(f).

### I. Section 17–22.5–403(9)(a)–(f)

Section 17–22.5–403(9)(a)–(f) applies to individuals convicted of certain felonies (namely, class 2 through 5 felonies, or class 6 felonies for previous felony offenders) committed on or after July 1, 1998 who violated one or more conditions of parole prior to July 1, 2003.

If reincarcerated during a mandatory parole period, these offenders may reapply for parole. However, if re-released with less than twelve months remaining on the mandatory parole period, or if incarcerated through the end of the mandatory parole period, these offenders are subject to mandatory supervision by the parole board for twelve months. Section 17–22.5–403(9)(a).

Those who violate a condition of this twelve-month supervised release are subject to various adverse actions by the parole board, including revocation of supervision and reincarceration "for any period of time up to twelve months." Offenders so reincarcerated are eligible at any time "for subsequent release for [another] twelve-month period of supervision." Section 17–22.5–403(9)(c).

The statute limits the total time an offender may be incarcerated, including reincarcerations after revocations of supervised release, to "the length of the offender's original sentence to incarceration plus the length of the offender's original sentence to mandatory parole plus twelve months." This period is calculated by combining the "time spent in incarceration as a result of the original sentence to incarceration, any time spent in incarceration as a result of revocation of mandatory parole, and any time spent in incarceration as a result of revocation of supervision." Section 17–22.5–403(9)(e).

### II. Constitutionality of § 17–22.5–403(9)(a)–(f)

Defendant contends that § 17–22.5–403(9)(a)–(f) violates constitutional due process, equal protection, cruel and unusual punishment, separation of powers, and double jeopardy provisions. However, inasmuch as only the separation of powers and double jeopardy arguments were presented to the trial court, we limit our consideration to just those two issues, and decline to address any others. See DePineda v. Price, 915 P.2d 1278, 1280 (Colo.1996) ("Issues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion."); People v. Goldman, 923 P.2d 374, 375 (Colo.App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

■ In assessing its constitutionality, we presume a statute is constitutional and place upon the party attacking it the burden of establishing its unconstitutionality beyond a reasonable doubt. People v. Strean, 74 P.3d 387, 393, 395 (Colo.App.2002) (rejecting, among other things, a separation of powers attack on the validity of the Colorado Sex Offender Lifetime Supervision Act).

### A. Separation of Powers

■ Defendant asserts that § 17–22.5–403(9)(a)–(f) violates the separation of powers doctrine because it gives the parole board authority to increase an offender's sentence, in derogation of powers exclusively reserved to the judiciary. We disagree.

Colorado Constitution, article III provides:
The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons

charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

According to defendant, § 17–22.5–403(9)(a)–(f) violates this provision because it authorizes the parole board to exercise a power in an area exclusively reserved to the judiciary, namely, sentencing. Defendant's argument, however, proceeds from a faulty premise:

> Although sentencing traditionally is a judicial function, it is not within the sole province of the judiciary. Rather, the General Assembly has the inherent powers to prescribe punishment for crimes and to limit the court's sentencing authority. The courts have no inherent authority to suspend a sentence or to impose a sentence contrary to that authorized by the General Assembly.

*People in Interest of R.W.V.*, 942 P.2d 1317, 1320 (Colo.App.1997) (citations omitted) (rejecting separation of powers challenge to requirement that prosecutor consent to deferred sentence).

Here, the General Assembly, through § 17–22.5–403(9)(a)–(f), simply extended Colorado's parole supervision scheme to provide additional means for successfully reintegrating offenders into the community, consistent with the needs of public safety. *See* § 17–22.5–102.5(1)(c), C.R.S.2003; *see also People v. McCullough*, 6 P.3d 774, 779–80 (Colo. 2000) (discussing purposes of parole). Because this function may be allocated to a parole board, the General Assembly has not impermissibly encroached, or permitted the parole board to encroach, upon powers reserved exclusively to the judiciary. *See Larsson v. Iowa Board of Parole*, 465 N.W.2d 272, 275 (Iowa 1991) ("Historically, corrections officials have been given broad discretion with respect to the role parole rightly plays in an individual prisoner's constructive reintegration into society."); *see also People v. Oglethorpe*, 87 P.3d 129, 136 (Colo.App.2003) (upholding, against separation of powers attack, parole board's statutory authority to grant parole or absolute release to sex offenders given an indeterminate to life sentence); *People v. Barber*, 74 P.3d

444, 446 (Colo.App.2003) (upholding, against separation of powers attack, parole board's statutory authority to revoke parole and reincarcerate offender); *People v. Barth*, 981 P.2d 1102, 1105 (Colo.App.1999) (upholding, against separation of powers attack, validity of mandatory parole sentencing scheme).

### B. Double Jeopardy

■ We likewise reject defendant's arguments that the post-release supervision scheme violates his right to be free from double jeopardy because it impermissibly increased his sentence beyond that originally imposed by the trial court.

Here, by virtue of § 17–22.5–403(9)(a)–(f), defendant was on notice that he could be subjected, under certain circumstances, to post-release supervision and reincarceration following the end of his mandatory parole period. Thus, he could not have had a legitimate expectation of finality in a sentence that, although announced by the court, was statutorily subject to possible revision. For this reason, we conclude that defendant's double jeopardy rights were not violated when, because of other intervening circumstances, he was subjected to the additional, statutorily required period of supervision. *See People v. Chavez*, 32 P.3d 613, 614–15 (Colo.App.2001) (upon defendant's termination from community corrections program, modification of six-year community corrections sentence to six years imprisonment plus three years mandatory parole did not violate double jeopardy).

### III. Providency Hearing Advisement

■ Defendant also asserts that, regardless of the constitutionality of the statute, he should not have to serve the additional year of supervision because he was not advised of such at his providency hearing. We are not persuaded.

■ Before accepting a guilty plea, a court must ensure that a defendant "understands the possible penalty or penalties" associated with the plea. Crim. P. 11(b)(4). In Colorado, this rule has been construed as requiring the court to apprise the defendant of direct, but not collateral, consequences attending the plea. *Craig v. People*, 986 P.2d 951, 963 (Colo.1999).

"Direct consequences are those which have [a] definite, immediate, and largely automatic effect on the range of possible punishment." *People v. Birdsong,* 958 P.2d 1124, 1128 (Colo.1998).

In contrast, "[a] collateral consequence is one that is contingent on a future event, the occurrence of which is unknown when the defendant is sentenced." *Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779, 805 (Ct. App.1999).

Thus, "where the consequence is contingent upon action taken by an individual or individuals other then [sic] the sentencing court—such as another governmental agency or the defendant himself—the consequence is generally 'collateral.' " *United States v. Littlejohn,* 224 F.3d 960, 965 (9th Cir.2000); *see People v. Marez,* 39 P.3d 1190, 1193–94 (Colo. 2002) ("the consequences of subsequent acts by a defendant ... are collateral rather than direct consequences of the earlier plea and therefore are not consequences of which the defendant must have been advised upon entering the earlier plea"); *People v. Pozo,* 746 P.2d 523, 526 (Colo.1987) (trial court need not advise defendant of potential deportation consequences attending plea); *People v. Ruiz,* 935 P.2d 68, 69–70 (Colo.App.1996) (trial court need not apprise defendant of prison security classification consequences of plea).

As these principles apply here, an offender's guilty plea does not require or inevitably result in post-release supervision: post-release supervision is required only after an offender has done something to cause reincarceration after revocation of mandatory parole. Consequently, the possibility that a defendant might be subjected to post-release supervision is not a direct consequence of a guilty plea, and thus, the trial court was not obliged to advise defendant of it at the providency hearing. *Cf. Craig v. People, supra,* 986 P.2d at 963 n. 9 (potential for transformation of mandatory parole period into additional prison time, due to future wrongdoing, is not an immediate and automatic result of pleading guilty and is thus a collateral consequence); *People v. Jones,* 957 P.2d 1046, 1048 (Colo.App.1997) (reincarceration as a result of parole violation a collateral consequence of guilty plea).

*IV. Sex Offender Conditions of Parole*

■ Finally, we agree with the trial court that it lacked jurisdiction to consider defendant's complaints regarding the sex offender conditions of his parole because, at bottom, these complaints challenge the Department of Correction's (DOC's) classification of him as a sex offender. *See People v. McMurrey,* 39 P.3d 1221, 1224–25 (Colo.App.2001) (DOC sex offender classification does not fall within the purview of Crim. P. 35(c)(2)).

Defendant's reliance on *People v. Turman,* 659 P.2d 1368, 1370 (Colo.1983), and *Chambers v. Colorado Department of Corrections,* 205 F.3d 1237, 1243 (10th Cir.2000), is misplaced. *Turman* dealt with the effect of an inmate's past behavior in calculating his current release date; it did not address, as here, a quintessentially DOC function (classification of offenders) and that function's possible effect on an offender's future behavior. *Chambers* held that time credits for classified sex offenders could not be taken away without due process; it said nothing about a challenge to the underlying classification or the proper parties to any such challenge.

The order is affirmed.

Judge CARPARELLI and Judge HUME concur.