Noel BERTRAND et al., Plaintiffs,

v.

Marcelo KOPCOW et al., Defendants.

Civil Action No. 13-cv-2513-WJM-KMT

United States District Court,
D. Colorado.

Signed August 5, 2016

Alison Lee Ruttenberg, Alison L. Ruttenberg, Attorney at Law, Boulder, CO, for Plaintiffs.

Ingrid Carlson Barrier, Christopher Wayne Alber, James Xavier Quinn, William V. Allen, Colorado Attorney General's Office, Denver, CO, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDERING PLAINTIFF RONALD MURRAY TO SHOW CAUSE WHY HIS CLAIM SHOULD NOT BE DISMISSED FOR LACK OF ARTICLE III JURISDICTION

William J. Martínez, United States District Judge

This lawsuit began as a widespread challenge to many alleged wrongdoings committed by the State of Colorado against prisoners and probationers classified as sex offenders, as well as against their family members. Through this Court's rulings and through mootness resulting from the passage of time, two Plaintiffs remain: Scott Winder (the family member of a sex offender and former probationer) and Ronald Murray (a parolee designated as a sex offender due to a juvenile conviction). These two Plaintiffs' respective claims are very different. This order addresses Murray's claim only.

Murray sues the Colorado Sex Offender Management Board ("SOMB"), his parole officer (Levi Bowland), and—ostensibly—the Colorado State Parole Board ("Parole Board") (collectively, "Defendants") for allegedly violating his right to familial association through sex offender treatment standards that prohibit him from having contact with his minor son. Murray seeks only injunctive and declaratory relief. (ECF No. 193 at 1–2, 7.)[1]

Currently before the Court is Defendants' Motion for Summary Judgment, arguing that this Court should abstain from

---

1. Murray's counsel has now twice stated that the Parole Board, the SOMB, Bowland, and Sheila Montoya (a defendant with respect to Winder's separate claim) are the only remaining Defendants in this action. (ECF No. 192 at 1–2; ECF No. 193 at 1–2.) Murray's counsel has also now twice represented that Murray and Winder are the only remaining plaintiffs.

Counsel for Defendants agrees with both assertions. (ECF No. 199 at 2 n.1.) The Court accepts this as equivalent to a stipulation under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and will therefore dismiss all Plaintiffs save for Murray and Winder, as well as all Defendants whom the parties have agreed to dismiss.

deciding Murray's claim. (ECF No. 180.) For the reasons explained below, the Court finds that abstention is inapplicable under the circumstances. However, the Court finds that the SOMB is not a proper defendant; that the Parole Board has never been defendant here; and that there is a serious question whether an injunction against the parole officer (Bowland) could actually redress Murray's claimed injuries. The Court will therefore order Murray to show cause why this action should not be dismissed for lack of Article III jurisdiction.

## I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A f act is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTS

The facts in this matter are undisputed.[2] Murray, in his teenage years, was adjudicated delinquent for unlawful sexual contact with a girl one year younger than he was. (ECF No. 193 at 4, ¶ 1.) In 2009, after Murray had become an adult, he was convicted of burglary and possession of controlled substances and was sentenced to a term of imprisonment in the custody of the Colorado Department of Corrections ("CDOC"). (*Id.* ¶ 3.) Because of his juvenile sex offense, CDOC administratively classified Murray as a sex offender. (*Id.*) Thus, when he was paroled in 2013, he was paroled as a sex offender. (*Id.*)

The SOMB develops standards and regulations regarding sex offenders in Colorado. *See* Colo. Rev. Stat. § 16–11.7–103(4). In that capacity, the SOMB publishes a document titled *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders*, available at https://cdpsdocs.state.co.us/somb/ADULT/FINAL_2012_Adult_Standards_120712.pdf (last accessed Aug. 3, 2016). One of the standards promulgated in this document is Standard 5.720, which states that sex offenders may have no contact with their "own child(ren) under the age of 18, [until] the offender has been approved for contact by the CST [3] based on the recommendation from a CCA [4]." *Id.* at 92. "Contact" is

---

**2.** Murray admitted all of Defendants' assertions of material fact. (*See* ECF No. 193 at 3–4.) Defendants did not respond to Murray's statement of additional facts (*id.* at 4–6), thus conceding those facts. See WJM Revised Practice Standard III.E.6 & 8(a).

**3.** "CST" means "community supervision team," defined as "[a] team of professionals including a minimum of the supervising officer, the treatment provider, and the polygraph examiner who collaborate to make decisions about the offender." *Id.* at 10.

**4.** "CCA" means "child contact assessment,"

defined very broadly to include essentially any form of communication, or even being near a location where the child can frequently be found. *Id.* at 93.[5]

Murray has an eight-year-old son. (ECF No. 193 at 5, ¶ 2.) Before going to prison for his burglary and drug convictions, Murray participated in his son's life. (*Id.* ¶ 6.) However, due to CDOC's classification of him as a sex offender, he is now forbidden under the foregoing Standards from having any interaction with his son. (*Id.*)

It has now been more than fourteen years since the offense that led to Murray's juvenile adjudication for unlawful sexual contact. (*Id.* at 6, ¶ 7.) In that time, he has never committed, or been accused of committing, any additional sex offenses. (*Id.*) Nor has he displayed a propensity toward any form of sexually abusive behavior, or toward fantasizing about sex with children. (*Id.* ¶ 8.) He has never been deemed to be a danger to his son, or been accused of doing anything sexually inappropriate to him. (*Id.* ¶ 9.)

### III. ANALYSIS

■ Defendants' sole argument against Murray's claim is that this Court should abstain from hearing his case under the abstention doctrine first articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought be-

fore the state court." *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir.1999).

Quite surprisingly, Murray does not respond in any form to Defendants' *Younger* abstention argument. The Court could therefore deem Murray to have conceded it. Solely due the weighty issues Defendants have raised, however, the Court will address the question on its merits.

■ In terms of discrete elements, *Younger* abstention has traditionally been explained as follows in the Tenth Circuit:

> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Amanatullah v. Colo. Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotation marks omitted). However, the Supreme Court's recent decision in *Sprint Communications, Inc. v. Jacobs,* —— U.S. ——, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013), disapproved the "important state interests" element of this test, finding that, in combination with the other two elements, it "would extend *Younger* to virtually all parallel state and federal proceedings." *Id.* at 593. Such a result, the Court said, would be contrary to *Younger's* character as an abstention doctrine designed for "exceptional circumstances." *Id.* at 593–94; *see also Brumfiel v. U.S. Bank, N.A.,* 2014 WL 7005253, at

---

defined as "[a] comprehensive evaluation conducted by a SOMB approved evaluator to assist the CST in determining the appropriateness of contact between a sex offender and his/her own child." *Id.* at 10.

5. Astonishingly, "contact" with a child even includes "[g]iving birth." *Id.*

*3 (D.Colo. Dec. 11, 2014) (analyzing effect of *Sprint* on *Amanatullah*).

In light of *Sprint*, this Court need analyze only the first two elements of *Younger* abstention: (1) ongoing proceedings that (2) provide an adequate state court forum to raise the arguments at issue. The Court finds that neither of these elements is satisfied.

## A. Element One: Ongoing Proceedings

■ Murray is indisputably on parole, rather than in the midst of a criminal or postconviction proceeding. Defendants nonetheless argue as follows that a proceeding is ongoing:

> [A] criminal proceeding is ongoing in the [*sic*] Murray's case. "[A] trial court loses jurisdiction upon imposition of a valid sentence *except under circumstances specified in Crim. P. 35.*" *People v. Mortensen*, 856 P.2d 45, 47 (Colo.App.1993) (emphasis added). Murray may raise his claim that the conditions of his parole violate his constitutional right to familial association. Under Colo. R. Crim. P. 35(c)(2)(I), "every person convicted of a crime is entitled as a matter of right to make application for postconviction review" and may raise in such a motion a claim that their "sentence [was] imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state."

(ECF No. 180 at 12.)

The Court is unsure precisely what Defendants are arguing here. Defendants may mean to say that a criminal proceeding is ongoing for Murray because he continues to serve his sentence (in the form of parole). But Defendants offer no authority to support the notion that a criminal proceeding is "ongoing" for the entire duration of a convict's sentence. The Court is likewise unaware of any such authority, nor is it a natural construction of the word "ongoing." The Court therefore rejects this argument.

Defendants may also mean to say that Murray could *institute* a proceeding by bringing a motion for postconviction review under Colorado Rule of Criminal Procedure 35 ("Rule 35"), which is Colorado's analog to 28 U.S.C. § 2255. Again, the Court is unaware of any interpretation of "ongoing" that could be interpreted as encompassing proceedings that the plaintiff *could* bring, but has not. Moreover, the argument assumes that Murray could indeed bring a Rule 35 motion to challenge his parole restrictions. That implicates the second element of the *Younger* analysis, to which the Court turns next.

## B. Element Two: Adequate State Court Forum

■ As stated above, Defendants believe that Murray may challenge the constitutionality of his parole restrictions through a Rule 35 motion. The Court is unconvinced. At least with respect to individuals like Murray, who were designated as sex offenders through CDOC's administrative classification system, Colorado courts are at best equivocal about the ability to challenge sex offender parole restrictions through a Rule 35 motion.

The first relevant decision is *People v. McMurrey*, where the Colorado Court of Appeals held that CDOC's classification of an inmate as a sex offender "is not an element of a defendant's sentence" and therefore any claim attacking that classification should be brought against CDOC directly (presumably through a civil lawsuit) rather than through a Rule 35 motion. 39 P.3d 1221, 1225 (Colo.App.2001). A few years later, the Colorado Court of Appeals cited *McMurrey* as support for the following holding: "we agree with the trial court that it lacked jurisdiction [under Rule 35] to consider defendant's com-

plaints regarding the sex offender conditions of his parole because, at bottom, these complaints challenge [CDOC's] classification of him as a sex offender." *People v. Jackson*, 109 P.3d 1017, 1021 (Colo.App. 2004).

It is not clear, either from this analysis or the *Jackson* opinion as a whole, whether the court was holding that (a) the appellant's specific challenges to his parole conditions were, in effect, challenges to his sex offender classification; or (b) any challenge to a sex offender parole condition is, in effect, a challenge to the underlying sex offender classification. However, a few years after *Jackson*, the Colorado Court of Appeals again took up the issue and appeared to adopt the latter view, holding that the sentencing court had no jurisdiction under Rule 35 to consider a appellant's "claim s regarding the conditions of his parole because these claims are grounded upon his classification [by CDOC] as a sex offender." *People v. Jones*, 222 P.3d 377, 380 (Colo.App.2009).

In short, the Colorado courts have not permitted challenges to parole conditions without first challenging the original sex offender classification. Their reasoning appears to assume that the classification, if valid, authorizes essentially any parole condition. Such reasoning is dubious, but for present purposes it is enough to note that Colorado courts are thus far unanimous in their conclusion that Rule 35 is not the appropriate vehicle for challenging the classification, yet such a challenge appears to be a prerequisite for challenging parole conditions flowing from the classification. Thus, it is doubtful whether Rule 35 offers the sort of state court remedy needed to justify *Younger* abstention.

## C. Other Decisions from this District and Elsewhere

The foregoing analysis is admittedly in conflict with an October 2015 Report &

Recommendation issued by Magistrate Judge Michael E. Hegarty. *See Shields et al. v. Duncan et al.*, No. 14–cv–2231–RM–MEH, ECF No. 162 (D.Colo., Oct. 23, 2015), *objection pending*. There, Judge Hegarty recommended *Younger* abstention on materially identical facts (*i.e.*, parolees—represented by the same attorney who represents Murray here—challenging parole conditions imposed due to their sex offender status), and for essentially the same reasons urged by Defendants here (who are represented by the same attorney who represents the defendants before Judge Hegarty).

With utmost respect to Judge Hegarty, the undersigned disagrees with his *Younger* analysis. As explained above, the undersigned sees no authority for the notion that a convict serving a sentence is part of an "ongoing" judicial or administrative proceeding simply on that account, particularly when the proceeding that will supposedly provide an adequate remedy (*i.e.*, a Rule 35 proceeding) is offered as something the convict *could* commence—thereby implicitly admitting that no proceeding is currently "ongoing." In addition, whereas Judge Hegarty views the Colorado Court of Appeals' decisions in *McMurrey*, *Jackson*, and *Jones* as leaving open the possibility that Rule 35 could be used to challenge conditions of parole (although not the sex offender classification itself), the undersigned sees those decisions as, at best, equivocal about the availability of Rule 35 to accomplish what Murray desires. The undersigned is unwilling to hold that an adequate state court remedy exists when there is significant uncertainty regarding the Colorado courts' willingness to entertain the type of claim at issue here.

The undersigned is also aware of an unpublished disposition in which Judge Robert E. Blackburn accepted a *Younger* abstention argument with respect to pro-

bationers challenging conditions imposed on account of their sex offender status (again represented by the same attorney representing Murray here). *See Houlne v. Everts*, 2015 WL 5451024 (D.Colo. Sept. 16, 2015). T he status of probationers is somewhat different because the conditions of their probation are usually part of the sentence imposed by the judge—in contrast to parolees such as Murray, whose conditions were imposed by the parole board on account of a sex offender classification made by CDOC. A challenge to one's sentence looks much more like something that should be brought under Rule 35.

Nonetheless, Judge Blackburn's reasoning raises an important issue that, for the undersigned, ultimately demonstrates why abstention is not an appropriate doctrine to invoke under the circumstances. Specifically, if a party may properly seek relief in Colorado state court under Rule 35, as Defendants contend, then the party has raised a habeas-type claim that normally must be *exhausted* through state court, but may nonetheless eventually be brought to federal court under 28 U.S.C. § 2254. Thus, if Rule 35 is applicable, then the parties and the Court should focus on statutorily prescribed exhaustion procedures, *see* 28 U.S.C. § 2254(b)(1)(A), not on judge-made abstention doctrine.

Defendants do not argue that Murray failed to exhaust state collateral review procedures before coming to federal court. Moreover, this lawsuit has been pending for three years, yet Defendants have never argued that Murray's claim is actually a habeas claim that should be analyzed under § 2254. Defendants instead argue as if

this case falls in some otherwise unknown category where federal courts never reach certain federal constitutional claims in deference to state habeas proceedings.[6]

As it turns out, it is a matter of some dispute whether challenges to parole conditions may be brought under 42 U.S.C. § 1983, or instead must be litigated through the habeas route. The Seventh Circuit has aptly explained the basic analytical problem, namely, in the parole context, it is difficult to distinguish convicts' conditions of confinement (normally challenged through § 1983) from the lawfulness of their confinement (normally challenged through habeas):

> For prisoners [as opposed to parolees], the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983. Attacks on the f act or duration of the confinement come under § 2254. For parolees, the question is more metaphysical, because the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or ... obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom.

*Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir.2003) (emphasis in original; citations omitted). The Seventh Circuit reasoned that eliminating or changing a condition of parole "would alter the confinement," rather than just altering the

---

**6.** Interesting preclusion consequences would flow from such a category. Exhaustion, in the usual legal sense, is normally the antithesis of preclusion—the entire point is that a party must have already litigated his or her claim before being allowed to relitigate it. By contrast, state court proceedings to which federal courts defer on abstention grounds tend to be given issue- and claim-preclusive effect in later federal court actions. *See* Charles Alan Wright *et al.*, 17B *Federal Practice & Procedure* § 4253 nn.55–56 and accompanying text (3d ed., Apr. 2016 update).

conditions of confinement. *Id.* at 580. Thus, in that case, the plaintiff should have brought his claims through the habeas route, rather than § 1983. *Id.*

The Ninth Circuit, however, reached the opposite conclusion in *Thornton v. Brown*, 757 F.3d 834 (9th Cir.2013). *Thornton*, similar to this case, was a § 1983 case challenging two specific parole conditions imposed on account of the plaintiff's sex offender status. *Id.* at 838. Recognizing the basic problem articulated in *Williams*, the Ninth Circuit was persuaded that § 1983 was still appropriate because "Plaintiff does not challenge his status as a parolee or the duration of his parole and, even if he succeeds in this action, nearly all of his parole conditions will remain in effect." *Id.* at 843. A dissenting judge rejected this approach as unworkable: "[T]he majority's focus on the number of challenged parole conditions is entirely arbitrary. Would Thornton have been barred from bringing a § 1983 action if he had challenged five parole conditions, instead of only two?" *Id.* at 849 (Ikuta, J.).

The Tenth Circuit has not taken a position on this debate. *See Banks v. United States*, 431 Fed.Appx. 755, 757 (10th Cir. 2011) (stating, in the context of *Bivens*—the federal-officer equivalent to § 1983—that it is "an open question in this circuit whether a challenge to parole conditions is more like a challenge to the fact or duration of one's confinement (and so cognizable in habeas) or more like a challenge to one's conditions of confinement (and so cognizable only in a *Bivens* action)"). Thankfully, this Court need not resolve the

dispute to resolve the instant motion. Whether challenges to parole conditions should normally come through the habeas route, or may be filed in the first instance under § 1983, Defendants' argument for abstention is misdirected. There is no basis for this Court to abstain from exercising jurisdiction over Murray's challenge to his parole conditions, and the Court therefore denies Defendants' motion for summary judgment.[7]

## IV. STATUS OF DEFENDANTS

■ Murray says that he "seeks an injunction against his parole officer, the parole board members and the SOMB to prohibit the enforcement of SOMB Standard 5.700 which unconstitutionally prohibits [him] from having any contact with his son." (ECF No. 193.) With respect to the SOMB, however, Murray recognizes that it is "the agency responsible for *promulgating* the [challenged] policies regarding sex offenders." (*Id.* at 2 (emphasis added).) Thus, there appears to be nothing to enjoin—the promulgation is a historical fact, and the regulations are on the books. Nor could the Court find any authority permitting it to order the SOMB to repeal the challenge regulations. Rather, the structure of American public rights jurisprudence dictates that the enforcing authority is the proper subject of an injunction, not the promulgating authority (unless they happen to be the same). *See, e.g., Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007). Thus, the SOMB members will be dismissed for lack of a justiciable case or

7. Abstention was Defendants' only argument advanced against Murray in their summary judgment motion. (*See* ECF No. 180 at 11–14.) In reply, however, Defendants attempt to incorporate another argument, *i.e.*, "Argument IV beginning on page 14 of the motion" (ECF No. 199 at 3), referring to ECF No. 180 at 14–18. This argument was not directed at Murray, but rather at former plaintiff Baruch

Bachofer. Moreover, the argument turns on the deference given to prison administrators to limit prisoners' contact with visitors. Defendants do not explain how this same legal framework applies to enforcement of sex offender regulations against parolees. Thus, it provides no basis to grant summary judgment in Defendants' favor.

controversy as between them and Murray. *See id.* (no Article III jurisdiction to enjoin enforcement of statutes or rules where the defendant is not responsible for enforcement).

As to enforcement specifically, Murray understands that "the Parole Board, parole officers and probation officers are responsible for the execution of the [challenged] policies as applied to individual offenders." (ECF No. 193 at 2.) But the Parole Board, as Defendants correctly point out, is not a party to this action. (ECF No. 180 at 13 n.3.) Rather, Murray named as defendants "John and Jane Does 1–20 in their personal capacities" (ECF No. 81 at 2), and then later explained that these John and Jane Does "are the DOC treatment providers, parole board members, parole officers or DOC corrections officers that ... personally made the decision to deny Ronald Murray the ability to live with his child .... They are sued in their personal capacities for nominal, compensatory and punitive damages" (*id.* ¶ 7). In other words, Murray has only ever sought to hold Parole Board members personally liable in damages for their past decisions. (*See also id.* ¶ 26 (arguing that parole board members should not be entitled to qualified immunity for their allegedly unconstitutional decisions).) Murray has never sought to enjoin the Parole Board as an institution, or any Parole Board member in his or her official capacity, which would be necessary for the injunction to be effective; otherwise, new Parole Board members would not be bound by it.

Moreover, although this lawsuit has been pending for three years, Murray has never served process on any Parole Board member (in whatever capacity), nor has he sought to substitute the Parole Board itself (or a Board member in his or her official capacity) in place of a John or Jane Doe. Thus, John and Jane Does 1–20 will

be dismissed without prejudice under Federal Rule of Civil Procedure 4(m). *See also Culp v. Williams*, 2011 WL 1597686, at *3 (D.Colo. Apr. 27, 2011) (dismissing John Doe defendants because "[m]ore than a year has passed since this case's inception" and "[t]he Court can think of no good reason as to why Plaintiff has been unable to obtain the true identity of these unnamed Defendants"); 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 10.02[2][d][i] ("If reasonable inquiry would have revealed the true identity, a pleading naming John Doe defendants will be dismissed." (citation omitted)).

This leaves only Murray's probation officer, Bowland. Although Murray names Bowland "in his official capacity for prospective injunctive and declaratory relief" (ECF No. 150 at 2), it is unclear whether an injunction against him could have any effect on any other parole officer, or on the Parole Board. It is plausible that Bow land has "some connection with enforcement of the provision at issue." *Bronson*, 500 F.3d at 1110 (quoting *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998)). On the other hand, if Bowland has no discretion in enforcing conditions imposed by the Parole Board, it may be that an injunction against Bowland would be essentially meaningless. *Cf. id.* at 1103 (noting parties' agreement to dismiss deputy officials as defendants, leaving only the main official as a defendant).

▇ Part of the "irreducible constitutional minimum" of Article III jurisdiction is that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). As this case currently stands, there is a serious question whether this Court can grant an injunction that will redress Murray's claimed injuries. Murray will therefore be ordered to show

cause why the case should not be dismissed for lack of Article III jurisdiction.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 180) is DENIED;

2. Per the parties' stipulation, the following Plaintiffs are DISMISSED, and the Clerk shall TERMINATE them: Noel Bertrand, William Hart, Loretta Marsh, Donna Mills, Rodel Miranda, Armando Gonzalez-Castillo, Nikolas Winder, T.J.B., David Murray, Baruch Bachofer, S.R.B., Cesar Aceves, Josie Amaya, J.H., L.B., Brian Baetz, S.D., Robert Herdman, and A.D.;

3. Per the parties' stipulation, all claims against the following Defendants are DISMISSED, and the Clerk shall TERMINATE them: Rick Raemisch, Andrea Bennett-Baily, and Rae Timme;

4. Plaintiff Ronald Murray's claims against the following defendants are DISMISSED for lack of Article III jurisdiction, and the Clerk shall TERMINATE them: Marcelo Kopcow, Erin Jemison, Mary Baydarian, Carl Blake, Allison Boyd, A. Mervyn Davies, Cheryl Davies, Jessica Curtis, Amy Fitch, Jeff Geist, Missy Gursky, Peggy Heil, William Hildebrand, Nancy Johnson, Jeff Jenks, Dianna Lwyer-Brook, Tom Leversee, Richard Bednarski, John Odenheimer, Jessica Meza, Angel Weant, Mimi Scheuermann, Doug Stephens;

5. Plaintiff Ronald Murray's claims against John Does 1–20 are DISMISSED WITHOUT PREJUDICE for failure to serve process, and the Clerk shall TERMINATE them;

6. **All future pleadings shall be captioned as follows: Ronald Murray** and Scott Winder, Plaintiffs, v. Levi Bowland and Sheila Montoya, Defendants; and

7. Plaintiff Ronald Murray is ORDERED TO SHOW CAUSE, on or before **August 15, 2016,** why his claims should not be dismissed on the basis that his alleged injury will not be redressed by a favorable decision by this Court on his claim against Bowland, thus depriving the Court of Article III jurisdiction. Defendants shall file a reply brief on or before **August 22, 2016.** No further briefing on this question will be accepted absent leave or further order of the Court.