23CA0520 Peo v Roark 10-09-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0520
Adams County District Court No. 78CR7987
Honorable Patrick H. Pugh, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Douglas Roark,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lisa Weisz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Douglas Roark, appeals the postconviction court's order denying his petition for postconviction relief under Crim. P. 35(c) without a hearing.  We affirm.

## I.    Background

¶ 2    In 1978, Roark was charged with several offenses, including, as relevant here, first degree murder and first degree sexual assault.  The circumstances underlying the charges are set forth in *People v. Roark*, 643 P.2d 756 (Colo. 1982), and we need not reiterate them here.

¶ 3    A jury convicted Roark of the first degree murder charge along with several others.  However, the supreme court reversed his convictions on appeal and remanded Roark's case to the district court for a new trial.  *See id.* at 774-75.  On remand, the prosecution and Roark reached a plea agreement in which Roark pleaded guilty to first degree murder in exchange for dismissal of the remainder of the charges.  After accepting the plea agreement, the court sentenced Roark to an indeterminate term of life in prison with the possibility of parole after twenty years.

¶ 4    After being incarcerated for approximately forty-two years, the Colorado State Board of Parole (parole board) granted Roark's

1

application for parole in April 2020.  Nearly two decades earlier, the Colorado Department of Corrections (CDOC) had classified Roark as an S-4 sex offender because the facts underlying his original charges and plea included allegations of a sex offense.[1]  As a result, the parole board required Roark to "participate in a sex offender intake [and] evaluation and successfully complete treatment at the discretion of the sex offender supervision team" as a condition of his parole.

¶ 5      In October 2020, RSA, Inc. — a facility that was providing Roark with sex offender treatment during his parole — discharged Roark from treatment due to noncompliance.  Roark's parole officer, Genie Connaghan, then referred Roark to Progressive Therapy Systems (PTS) for an evaluation.  Roark alleges that he received a report from PTS saying that "treatment would be extremely difficult

---

[1] In 2006, Roark (under an alias) filed a civil rights lawsuit against the Colorado Department of Corrections and six of its agents under 42 U.S.C. § 1983.  *See Murphy v. Colo. Dep't of Corr.,* 381 F. App'x 828 (10th Cir. 2010).  He alleged in relevant part that the defendants had "violated his constitutional rights by wrongfully classifying him as a[n] S-4 sex offender and by refusing to reconsider his sex offender classification."  *Id.* at 830.  The federal district court granted summary judgment in favor of the defendants, which the Tenth Circuit Court of Appeals affirmed on appeal.  *Id.* at 829.

due to the lengthy period between the offense and treatment." But, according to Officer Connaghan, "Roark was denied treatment [at PTS] because he stated he didn't want treatment[,] and he was in denial, even though he wasn't in denial [while] at RSA." Officer Connaghan referred Roark to another treatment provider, but "due to [Roark's] denial, high risk, and violence of the crime," that provider "would not even do an intake." Officer Connaghan filed a complaint (the complaint) to revoke Roark's parole. The parole board held a hearing on the complaint in December 2020.

¶ 6 At the hearing, Roark pleaded guilty. Roark admitted to "screwing up" and violating a condition of his parole by being discharged from sex offender treatment, but he explained to the hearing officer that the violation was a result of the numerous barriers he faced upon release, rather than any malicious intent. The hearing officer found Roark guilty, revoked his parole, and remanded Roark to the CDOC. The parole board reviewed Roark's parole eligibility again in May 2021 but deferred the possibility of his re-parole until May 2022.

¶ 7    In July 2021, Roark received a letter from the parole board in response to an appeal he had filed in June 2021.[2]  The letter indicated that the hearing officer rendered the decision to revoke Roark's parole in December 2020 and that any appeal needed to be postmarked within thirty days of a revocation decision.  Thus, because Roark's appeal was postmarked in June 2021 — beyond the thirty-day deadline — his appeal was untimely, and the parole board wouldn't consider it.

¶ 8    In October 2021, Roark filed a pro se petition for postconviction relief under Crim. P. 35(c).  The postconviction court appointed counsel for Roark, and the public defender assigned to represent Roark later filed a supplement to Roark's pro se petition (collectively, postconviction motion).  In his postconviction motion, Roark asserted that he should be afforded an evidentiary hearing on whether (1) the CDOC's S-4 classification and requirement for offense-specific treatment as a condition of parole violated due process; (2) the parole revocation process violated his right to due process; (3) the thirty-day deadline to appeal the parole revocation

---

[2] A copy of the appeal he sent to the parole board doesn't appear in the record.

was arbitrary and capricious; and (4) the parole board's deferment of his eligibility for re-parole in May 2021 violated double jeopardy. After considering the prosecution's response and Roark's reply, the postconviction court denied Roark's postconviction motion without a hearing.

¶ 9 Roark appeals the summary denial of his motion and asserts that he is entitled to an evidentiary hearing on the claims for relief that he raised in his postconviction motion. For the reasons discussed below, we disagree.

## II. Standard of Review

¶ 10 We review de novo a postconviction court's decision to deny a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Cali*, 2020 CO 20, ¶ 14. "A defendant need not set forth the evidentiary support for his allegations in his initial Crim. P. 35 motion; instead, a defendant need only assert facts that if true would provide a basis for relief under Crim. P. 35." *White v. Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988). The purpose of an evidentiary hearing on a Crim. P. 35(c) motion "is to receive evidence pertinent to allegations that cannot be disposed of by reference to the trial record alone." *People v. Fernandez*, 53 P.3d 773, 775 (Colo. App.

5

2002). "A court may deny a defendant's Crim. P. 35(c) motion without an evidentiary hearing 'only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief.'" *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 7 (quoting *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003)).

### III. The Postconviction Court Lacked Jurisdiction to Consider Roark's Challenge to His S-4 Sex Offender Classification Under Crim. P. 35(c)

#### A. Applicable Legal Principles

¶ 11 "A trial court loses jurisdiction upon imposition of a valid sentence except under the circumstances specified in Crim. P. 35." *People v. Wiedemer*, 692 P.2d 327, 329 (Colo. App. 1984), *abrogated on other grounds by, Woo v. El Paso Cnty. Sheriff's Off.*, 2022 CO 56. Once a sentence is imposed, the executive branch — of which the CDOC and parole board are a part — "is responsible for carrying out the court's mandate." *People v. Barth*, 981 P.2d 1102, 1105 (Colo. App. 1999); *see In re Question Concerning State Jud. Rev. of Parole Denial*, 610 P.2d 1340, 1341 (Colo. 1980); *People v. Abdul-Rahman*, 2024 COA 118, ¶ 11 ("The [parole] [b]oard is an administrative entity located within Colorado's Executive Branch.")

6

(*cert. granted* June 23, 2025); *see also* § 24-1-128.5, C.R.S. 2025 (creating the CDOC, which includes the division of adult parole and the parole board, as an executive branch agency).

¶ 12    The CDOC has "statutory authority and discretion to classify a defendant as a sex offender for the purposes of treatment." *People v. McMurrey*, 39 P.3d 1221, 1224 (Colo. App. 2001); *see People v. Jones*, 222 P.3d 377, 380 (Colo. App. 2009); *see also* § 16-11.7-101(1), C.R.S. 2025 (declaring the need to "comprehensively evaluate, identify, treat, manage, and monitor adult sex offenders who are subject to the supervision of the criminal justice system"); § 16-11.7-105(1), C.R.S. 2025 (requiring any person defined as a sex offender who is placed on parole to undergo appropriate treatment based on "recommendations [of] the [CDOC]").

¶ 13    Judicial review of executive branch decisions is limited to that which is allowed by the separation of powers doctrine outlined in article III of the Colorado Constitution, unless authorized by other law. *See In re Question Concerning State Jud. Rev.*, 610 P.2d at 1341. A defendant who asserts that his parole has been unlawfully revoked can seek postconviction review under Crim. P. 35(c)(2)(VII).

An "unlawful" revocation, for purposes of review under Crim. P. 35(c)(2)(VII), includes allegations that the parole board or hearing officer violated the due process rights afforded to a defendant during the revocation process. *See People v. Melnick*, 2019 COA 28, ¶¶ 8-9. However, Colorado appellate courts have "consistently declined" to review contentions challenging discretionary decisions of the CDOC or the parole board pursuant to Crim. P. 35 because such claims are not encompassed by that rule. *Id.* at ¶ 7.

¶ 14 Additionally, as relevant here, "[s]ex offender classification hearings are quasi-judicial proceedings subject to review under C.R.C.P. 106(a)(4)." *Jones*, 222 P.3d at 380. A complaint pursuant to C.R.C.P. 106(a)(4) must be filed in a district court no later than "28 days after the final decision of the [governmental] body." C.R.C.P. 106(b).

### B. Analysis

¶ 15 Roark asserts that the CDOC unlawfully classified him as an S-4 sex offender because he wasn't convicted of a sex offense. He argues that the parole board therefore couldn't legally require him to participate in sex offender treatment or revoke his parole for being terminated from such treatment. The People argue that the

postconviction court, bound by this court's precedent, properly concluded that it lacked jurisdiction to consider this claim under a Crim. P. 35(c) petition. *See* C.A.R. 35(e). We agree with the People.

¶ 16 In *McMurrey*, the defendant was classified as an S-4 sex offender after undergoing a CDOC clinical needs assessment. 39 P.3d at 1222. The defendant, through court-appointed counsel, challenged his sex offender classification by filing a Crim. P. 35(c) motion with the district court. *Id.* at 1223. Similar to the arguments Roark raised in his postconviction motion, the defendant in *McMurrey* argued that the sex offender classification affected his "liberty interests" and violated his right to due process. *Id.*

¶ 17 The *McMurrey* division noted that "S-4 offenders" are "individuals whose history indicates sexual assaults or deviance for which they may not have been convicted" and may include individuals who accepted a plea bargain where the underlying factual basis of the crime involved a sex offense. *Id.* at 1224; *see Murphy*, 381 F. App'x at 829-30. The *McMurrey* division concluded that, because the CDOC was authorized by statute and its own regulations to classify inmates not convicted of sex offenses as sex offenders, the defendant's due process claim was a challenge to the

9

CDOC's general statutory authority and discretion, as well as to its authority as applied to the defendant. 39 P.3d at 1224; *see also* § 16-11.7-105(1) (requiring an adult sex offender to receive treatment as part of placement on parole based on CDOC recommendations after sentencing); § 16-11.7-102(1), (2)(a)(II) (defining "adult sex offender" to include a defendant convicted "of any criminal offense, the underlying factual basis of which involves a sex offense"). The division concluded that the defendant's claims weren't properly brought under Crim. P. 35(c). *McMurrey*, 39 P.3d at 1225.

¶ 18    The division in *Jones* also addressed circumstances similar to those raised by Roark's postconviction motion. In *Jones*, the division addressed the defendant's Crim. P. 35(c) challenge to his parole revocation for noncompliance with a parole condition requiring him to participate in sex offender treatment based on his classification as an S-4 sex offender. 222 P.3d at 378-79. Similar to Roark, the defendant in *Jones* also challenged his classification as an S-4 sex offender based on facts underlying a non-sex offense conviction. *Id.* at 379.

¶ 19     Affirming the district court's denial of the defendant's Crim. P. 35(c) motion, the *Jones* division noted that "[s]ex offender classification hearings are quasi-judicial proceedings subject to review under C.R.C.P. 106(a)(4)." 222 P.3d at 380. And, the division concluded, "even if considered a complaint filed pursuant to C.R.C.P. 106(a)(4)," the defendant's challenge to his sex offender classification was untimely because it was filed over three years after the CDOC's classification decision — well beyond the jurisdictional time limit indicated in C.R.C.P. 106(b). *Id.*; *see also Auxier v. McDonald*, 2015 COA 50, ¶ 12 ("The limitations period prescribed by Rule 106(b) is jurisdictional and cannot be tolled or waived.").

¶ 20     Despite acknowledging *McMurrey* and *Jones*, Roark urges us to consider the following language in *Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1283 (D. Colo. 2016): "Colorado courts have not permitted challenges to parole conditions without first challenging the original sex offender classification. Their reasoning appears to assume that the classification, if valid, authorizes essentially any parole condition. Such reasoning is dubious . . . ." We aren't persuaded.

11

¶ 21     *Bertrand* is a federal district court case, and its dicta isn't binding on us.  *Cf. People v. Dunlap*, 975 P.2d 723, 743 (Colo. 1999) (noting federal district court must accept state appellate courts' interpretation of state law).  And while we aren't bound by decisions of other divisions of this court, *People v. Snelling*, 2022 COA 116M, ¶ 49 n.2, we find the reasoning of *McMurrey* and *Jones* persuasive and decline to depart from it under the facts of this case.

¶ 22     Thus, we conclude that, consistent with *McMurrey* and *Jones*, Roark was required to challenge his sex offender classification under C.R.C.P. 106, rather than Crim. P. 35(c).  He didn't do so. The parole board therefore had the authority to impose the parole condition requiring him to participate in sex offender treatment. *Jones*, 222 P.3d at 380.  Even if the postconviction court had liberally construed Roark's postconviction motion as a challenge to the CDOC's and the parole board's authority under Rule 106, Roark's challenge was several decades too late.  *Id.*  Accordingly, the court didn't err by concluding it lacked jurisdiction to consider this claim and denying Roark's request for a hearing.

## IV. The Parole Revocation Hearing Didn't Violate Roark's Due Process Rights

### A. Additional Background

¶ 23    When Roark received the complaint approximately two months before the hearing, it alleged one violation — that he failed to comply with the condition requiring him to "follow the directives of and cooperate with" his parole officer by being terminated from sex offender treatment through RSA. The complaint — which contained Roark's signature certifying that he'd read it — was accompanied by two documents advising him of his right to (1) legal counsel; (2) testify; (3) present witnesses and documentary evidence; (4) subpoena adverse witnesses; and (5) cross-examine adverse witnesses. The advisements also stated, "THE INITIAL APPEARANCE MAY BE A FULL EVIDENTIARY HEARING," and "YOU SHOULD, THEREFORE, BE PREPARED TO DEFEND AGAINST THE CHARGE(S) ALLEG[ED]." Roark's signature also appeared at the bottom of each of the advisements.

¶ 24    When the hearing began, the hearing officer affirmed that Roark had received, reviewed, and understood the complaint and the advisements that accompanied it. The hearing officer also

discussed with Roark his evidentiary rights, such as his right to present evidence and witnesses and his ability to waive legal counsel and proceed with self-representation.

## B.     Applicable Legal Principles

¶ 25     "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *People v. Loveall*, 231 P.3d 408, 414 (Colo. 2010) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).  However, the Colorado Supreme Court has adopted "minimum requirements of due process" at parole revocation hearings.  *People v. Atencio*, 525 P.2d 461, 462 (Colo. 1974) (quoting *Morrissey*, 408 U.S. at 489).  As relevant here, these minimum requirements include (1) written notice of the claimed violations of parole; (2) an opportunity to present witnesses and documentary evidence; and (3) the right to confront and cross-examine adverse witnesses.  *Id.*; *see* § 17-2-103(8)-(9)(a), C.R.S. 2025.

## C.    Analysis

¶ 26     Roark asserts that his due process rights were violated during the parole revocation process because he (1) was denied notice of

the grounds for revocation; (2) wasn't permitted to present witnesses or evidence; and (3) wasn't provided an opportunity to cross-examine Officer Connaghan. We reject these assertions for three reasons.

¶ 27 First, as noted above, the complaint expressly informed Roark of his alleged parole violation and the supporting basis, i.e., that Roark had been terminated from sex offender treatment for noncompliance. Roark affirmed on the record that he had received a copy of the complaint and had read and understood it. The complaint itself contains Roark's signature under a statement certifying that he had read the complaint and the accompanying advisements. Furthermore, Roark's postconviction motion acknowledges that he received, read, and understood the complaint, which showed his termination from sex offender treatment as the justification for the parole revocation proceedings. Thus, the record demonstrates that Roark received notice of the grounds for revocation of his parole — his termination from sex offender treatment through RSA — and we reject his assertion otherwise.

¶ 28 Second, the record belies Roark's assertion that he wasn't permitted to present witnesses or evidence other than his own

testimony. On at least three occasions during the hearing, the hearing officer asked Roark if he had "anything further." Roark never indicated that he had any documentary evidence or witnesses contradicting his admission that he had been discharged from sex offender treatment through RSA. Likewise, the record doesn't demonstrate that Roark subpoenaed any witnesses or had witnesses available at the hearing despite receiving notice of his rights well in advance of the hearing. Thus, Roark wasn't denied the opportunity to present evidence or witnesses; he merely chose not to do so.

¶ 29 Third, we disagree with Roark that he wasn't provided with an opportunity to cross-examine Officer Connaghan. During the dispositional phase of the hearing, Officer Connaghan testified before Roark's turn to speak. While it's true that the hearing officer restricted Roark's time to present mitigation of his guilty plea, Roark could've used the allotted time to cross-examine Officer Connaghan. Instead, Roark chose to use the time that the hearing officer gave him to testify regarding the barriers he faced when attempting to reintegrate into society after being incarcerated for forty-two years. Regardless, the hearing officer asked Roark

multiple times if he had "anything further." At no time did Roark ask any questions of Officer Connaghan.

¶ 30 Because the record demonstrates that Roark was afforded the "minimum requirements of due process" before and at his parole revocation hearing, *Atencio*, 525 P.2d at 462 (quoting *Morrissey*, 408 U.S. at 489), he wasn't entitled to an evidentiary hearing on this claim, and the court therefore didn't err by denying him one.

## V. Enforcement of the Thirty-Day Deadline to Appeal the Parole Board's Revocation Decision Isn't Arbitrary and Capricious

### A. Applicable Legal Principles

¶ 31 When the parole board revokes a person's parole, the final disposition must be reduced to writing, and "[t]he parolee shall be advised by the board of the final decision at the conclusion of the hearing" or within five working days of the hearing. § 17-2-201(9)(b), C.R.S. 2025. A copy of the parole board's final order must be delivered to the parolee "within ten working days after the completion of the hearing." *Id.* "If the parolee decides to appeal the decision to revoke his parole, such appeal shall be filed within thirty days of such decision." § 17-2-201(9)(c).

¶ 32 The parole board is an administrative entity. § 17-2-201(1)(a); § 24-1-105, C.R.S. 2025. As an administrative entity, the parole board's exercise of discretion is reviewed under an "arbitrary and capricious" standard, meaning that the parole board acts in an arbitrary and capricious manner if it (1) doesn't use "reasonable diligence and care" to receive evidence that it is authorized to consider; (2) doesn't give "candid and honest consideration" to the evidence it receives; and (3) takes action based on conclusions from the evidence that a reasonable person couldn't reach if that person was "fairly and honestly considering the evidence." *Rice v. Auraria Higher Educ. Ctr.*, 131 P.3d 1096, 1100 (Colo. App. 2005).

## B. Analysis

¶ 33 In addition to arguing that the postconviction court should have conducted an evidentiary hearing to determine whether the enforcement of the thirty-day revocation appeal deadline was arbitrary and capricious, Roark asserts the postconviction court should've held a hearing on whether he timely received a written copy of the December 2020 revocation decision and whether he was timely advised of his right to appeal that decision.

18

¶ 34    As a threshold matter, we note that Roark's latter two arguments don't appear to be preserved.  Roark didn't raise these issues in his postconviction motion, nor does the court appear to have otherwise addressed the timeliness of Roark's receipt of the written revocation decision or whether he was timely advised of his right to appeal it.  *See Forgette v. People*, 2023 CO 4, ¶ 21 ("[A] party must present the trial court with 'an adequate opportunity to make findings of fact and conclusions of law on any issue before [an appellate court] will review it.'" (citation omitted)); *see also* C.A.R. 28(a)(7)(A) (noting that an appellant's brief must indicate "whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled").  Regardless, the record demonstrates that the hearing officer informed Roark why his parole was being revoked at the end of the revocation hearing.  *See People v. Elder*, 36 P.3d 172, 174 (Colo. App. 2001) (holding that oral findings made on the record detailing the reason for revocation and evidence in support thereof can be a constitutionally adequate substitute for written findings).  And the hearing officer attempted to advise Roark of his right to appeal, but Roark wouldn't listen and instead responded with profanities.

19

¶ 35     Regarding Roark's remaining assertion, "[i]t is only when the [parole] [b]oard has failed to exercise its statutory duties that the courts of Colorado have the power to review the [parole] [b]oard's actions." *In re Question Concerning State Jud. Rev.*, 610 P.2d at 1341.  Roark hasn't cited — nor have we found — any authority demonstrating that the parole board has discretion to accept a parolee's appeal after the statutorily mandated deadline passes.  Thus, we conclude the parole board didn't fail to exercise its statutory duty.  Rather, by denying Roark's untimely appeal, it acted consistently with section 17-2-201(9)(c)'s requirement that a parolee wishing to appeal a parole board's revocation decision do so within thirty days of the decision.

¶ 36     We acknowledge that Roark appears to have believed that the parole board's May 2021 decision, rather than the hearing officer's December 2020 decision, was the decision from which the thirty-day deadline to appeal started to run.  He was incorrect.  And, because we don't have a copy of Roark's appeal in the record, it's not clear whether his June 2021 appeal was intended to be an appeal of the hearing officer's December 2020 revocation decision or the parole board's May 2021 decision rejecting his reauthorization

for parole. Regardless, even assuming without deciding that the parole board has the discretion to accept an appeal that is otherwise untimely under section 17-2-201(9)(c), given our conclusions in Part III.B above about the parole board's authority to impose offense-specific parole conditions, there was no reason for it to exercise such discretion in this case. We thus reject Roark's assertion that section 17-2-201(9)(c)'s thirty-day appeal deadline is arbitrary and capricious generally or as applied to him. The postconviction court therefore didn't err by denying him an evidentiary hearing on this issue raised in his postconviction motion.

VI. The Parole Board's Decision in May 2021 Didn't Violate Double Jeopardy

A. Applicable Legal Principles

¶ 37      Colorado appellate courts have consistently considered parole a privilege; "no prisoner is entitled to it as a matter of right." *In re Question Concerning State Jud. Rev.*, 610 P.2d at 1341 (citation omitted); *People v. Gallegos*, 914 P.2d 449, 451 (Colo. App. 1995) (noting Colorado recognizes parole as a privilege); *accord People v. Taylor,* 74 P.3d 396, 400 (Colo. App. 2002). Furthermore, because

revocation of a defendant's parole is administrative in nature, "it does not constitute punishment, but simply reaffirms the original sentence and requires the defendant to serve it in custody." *People v. Sa'ra*, 117 P.3d 51, 58 (Colo. App. 2004); *see Gallegos*, 914 P.2d at 451. And due to the administrative character of a parole revocation proceeding, the protections of the Double Jeopardy Clause aren't triggered. *See Gallegos*, 914 P.2d at 451.

## B.    Analysis

¶ 38    Roark argues that the parole board's May 2021 denial of his re-parole violated the Double Jeopardy Clause because it punished him for charges that were dismissed in 1982 and increased his reincarceration from 180 days to 1 year. *See People v. Tanner*, 2023 COA 97, ¶ 6 (noting that the Double Jeopardy Clause protects against multiple punishments for the same offense); *see also* § 17-2-201(14) (providing that "[t]he [parole] board shall consider the parole of a person whose parole is revoked . . . for a technical violation . . . at least once within one hundred eighty days after the revocation" if the person's release date is more than nine months from the date of the person's revocation). We aren't persuaded for two reasons.

¶ 39    First, as discussed in Part III.B above, the CDOC has the authority and discretion to classify a defendant as a sex offender for treatment purposes when, as here, the underlying facts of a defendant's conviction involved a sex offense, even if the conviction itself wasn't for a sex offense. *See McMurrey*, 39 P.3d at 1224.

¶ 40    Second, the parole board's decision to revoke Roark's parole wasn't punishment but merely reaffirmed his original sentence to life in prison and required him to serve it in custody unless he was reauthorized for parole. *Sa'ra*, 117 P.3d at 58; *see Gallegos*, 914 P.2d at 451. Notably, section 17-2-201(14) provides that "[t]he [parole] board shall consider the parole of a person whose parole is revoked . . . for a technical violation . . . at least once within one hundred eighty days after the revocation," but it doesn't restrict the parole board's ability to defer any subsequent review period for a period of time. And, given Colorado's longstanding precedent that parole is a privilege, not a right, and that revocation of parole doesn't constitute new or additional punishment for the same conduct for which a person was already convicted, *see Gallegos*, 914 P.2d at 451, we fail to see — nor does Roark explain — how the

parole board's decision to defer review of his appropriateness for re-parole violates the Double Jeopardy Clause.

¶ 41 Roark thus failed to allege facts that, even if accepted as true, would entitle him to relief, and the postconviction court didn't err by declining to set this claim for a hearing.

## VII. Disposition

¶ 42 The order is affirmed.

JUDGE J. JONES and JUDGE KUHN concur.